−N\s

LYNN GAVIN, BAMIDELE HAMBOLU

P.O. Box 320515

San Francisco, CA 94132

Pro Se Litigants

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT − 7 2024

CENTRAL DISTRICT OF CALIFORNIA
BY ⟋NE⟍          DEPUTY

− IFP Submitted

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT CALIFORNIA

LYNN GAVIN, BAMIDELE HAMBOLU

all other similarly situated et al.,

                    Plaintiffs,

            vs.

Fortress Investment Group LLC,

Constantine Dakalois, Maximus Real Estate

Partners, Robert A. Rosania, Bernard Polacci,

Seth Mallen, Parkmerced Investors Properties

LLC, The Rockpoint Group LLC, Wasserman

Law Firm, David P. Wasserman #171923,

Stellar Management, Laurence Gluck,

Case No.: 2:24-cv-08607-SVW-(PD)

Americans with Disabilities Title II

Americans with Disabilities Title III

Animal Cruelty

42 U.S.C. § 1983

CIVIL R.I.C.O. 18 U.S.C. §§ 1961-1968 et seq

Jury Trial Demanded

University, London Breed,  Ahsha Safai

 Gavin Newsom, Kamala Harris,

Sean Elsbernd #209067, Dennis Herrera

#139669, David Chiu #189542, Yvonne Meré

#173594, DA George Gascón #182345,

Carmen Chu, Katy Tang, San Francisco Public

Utilities Commission, and Does 1-50

Defendants.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................. 07

I.   JURISDICTION ........................................................................................... 13

II.  VENUE ........................................................................................................ 13

III. PARTIES ......................................................................................... 13, 14, 15

NATURE OF THE CASE ................................................................................... 16

IV. STATEMENT OF FACTS ............................................................................ 22

V.  CAUSES OF ACTION ................................................................................. 53

First Cause of Action – Title II of the 1990 Americans with Disabilities Act

28 C.F.R. § 35.130 ............................................................................................. 53

Second Cause of Action - Title II of the 1990 Americans with Disabilities Act

28 C.F.R. § 35.130 ............................................................................................. 55

Third Cause of Action – Title III of the 1990 Americans with Disabilities Act

28 C.F.R. § 36.207(b) ........................................................................................ 58

Fourth Cause of Action - Title II of the 1990 Americans with Disabilities Act

 28 C.F.R. § 35.134 ............................................................................................ 60

Fifth Cause of Action – Title III of the 1990 Americans with Disabilities Act

28 C.F.R. § 36.206 (a)(c)(3)(4) Retaliation ...................................................... 62

Sixth Cause of Action Title III of the 1990 Americans with Disabilities Act

28 C.F.R. 36.206 (a)(c)(3)(4) Retaliation ......................................................... 64

Seventh Cause of Action  Title III of the 1990 Americans with Disabilities Act

28 C.F.R. 36.206 (a)(c)(3)(4) Retaliation ......................................................... 67

Eighth Cause of Action Animal Cruelty ........................................................... 70

Ninth Cause of Action Federal R.I.C.O. Conspiracy 18 U.S.C. § 1962(d) ...... 71

Page(s)

Tenth Cause of Action Federal R.I.C.O. Conspiracy of Bribe18 U.S.C. § 1961 Section 201 ... 74

Eleventh Cause of Action Federal R.I.C.O. Conspiracy 18 U.S.C. § 1961 Section 201............. 78

Twelfth Cause of Action Federal R.I.C.O. Conspiracy 18 U.S.C. § 1961 et seq.

Section 1341 Mail Fraud ............................................................................................. 81

Thirteenth Cause of Action Fair Debt Collection Practices Act 15 U.S.C. § 1692-1692p ....... 84

Fourteenth Cause of Action Federal R.I.C.O. Conspiracy  18 U.S.C. § 1961 et seq.

Section 1343 Wire Fraud ............................................................................................. 86

Fifteenth Cause of Action Federal R.I.C.O. Conspiracy  18 U.S.C. § 1961 et seq.

Section 1343 Wire Fraud ............................................................................................. 88

Sixteenth Cause of Action - Fifteenth Cause of Action Federal R.I.C.O. Conspiracy

Money Laundering 18 U.S.C. § 1956 et seq ................................................................ 91

Seventeenth Cause of Action – 42 U.S.C. § 1983 U.S. Const. Fourth Amendment ................ 93

Eighteenth Cause of Action - 42 U.S.C. § 1983 U.S. Const. Seventh Amendment ................ 95

Nineteenth Cause of Action - 42 U.S.C. § 1983 U.S. Const. Eighth Amendment ................... 98

Twentieth Cause of Action - 42 U.S.C. § 1983 U.S. Const. Eighth  Amendment ................... 100

Twenty-First Cause of Action - 42 U.S.C. § 1983 U.S. Const. Ninth Amendment ................ 102

Twenty-Second Cause of Action - 42 U.S.C. § 1983 U.S. Const. Ninth Amendment ........... 106

Twenty-Third Cause of Action - 42 U.S.C. § 1983 U.S. Const. Fourteenth Amendment .......107

Twenty-Fourth Cause of Action - 42 U.S.C. § 1983 U.S. Const. Fourteenth Amendment ..... 109

Twenty-Fifth Cause of Action – State Disability Gov Code §§ 12955 (a) .............................. 112

Twenty-Sixth Cause of Action -  State Disability Gov Code §§ 12955 (k) .............................. 115

Twenty-Seventh Cause of Action –  The Unruh Act Civ. Code § 51 et seq. ........................... 117

Twenty-Eighth Cause of Action - The Unruh Act Civ. Code § 51 et seq. ...............................120

Twenty-Ninth Cause of Action – The Disabled Persons Act Civ. Code § 54.1 et seq. ..,......... 122

Thirtieth Cause of Action -  The Disabled Persons Act Civ. Code § 54.1 et seq. .....................125

Public Accommodations

Page(s)

Thirty-First Cause of Action – Ralph Civil Rights Act Cal. Civ. Code § 51.7 et seq. .............. 127

Thirty-Second Cause of Action -California Constitution Article I § 3 .................................. 131

Thirty-Third Cause of Action – California Constitution Art I § 4 ........................................ 133

Thirty-Fourth Cause of Action – California Constitution Art I § 7 ..................................... 135

Thirty-Fifth Cause of Action - California Constitution Art I § 7................................................ 136

Thirty-Sixth Cause of Action - California Constitution Art I § 20 ...................................... 140

Thirty-Seventh Cause of Action – Business & Professions Code 17200 et seq. ..................... 142

Thirty-Eighth Cause of Action - Business & Professions Code 17200 et seq. ........................ 145

Thirty-Ninth Cause of Action – Breach of Contract 24 C.F.R.§ 982.453 ................................ 147

Fortieth Cause of Action – Fraud Upon the Court ...................................................................... 153

Forty-First Cause of Action – Fraud Cal. Civ. Code § 1572 et seq ........................................... 156

Forty-Second Cause of Action – Misappropriation of Government Funds ............................. 159

Forty-Third Cause of Action – Deceit Cal.Civ. Code § 1711 et seq .......................................... 162

Forty-Fourth Cause of Action – Breach of Implied Warranty .................................................. 166

Forty-Fifth Cause of Action – Retaliation Cal. Civ. Code § 1942.5 et seq ............................... 168

Forty-Sixth Cause of Action - Demolition 1940.6 ..................................................................... 171

Forty-Seventh Cause of Action – San Francisco Sunshine Ordinance ....................................174

Forty-Eighth Cause of Action – Business Professions Code § 6067........................................ 176

Forty-Ninth Cause of Action – Business Professions Code § 6068 ......................................... 179

Fiftieth- Cause of Action – Perjury ............................................................................................ 183

Fifty-First Cause of Action – Improper Notice Cal. Civ. Code § 1161.1. ................................186

Fifty-Second Cause of Action – Improper Notice Cal. Civ. Code § 1162(a) ........................... 187

Fifty-Third Cause of Action – State 90 Day Notice Law Cal. Civ. Code § 1954.535 et seq... 190

Fifty-Fourth Cause of Action – Abuse of Official Capacity ...................................................... 192

Fifty-Fifth Cause of Action – Dishonest Services. .................................................................... 196

Fifty-Sixth Cause of Action – Failure to Prevent Harm ............................................................ 200

Fifty-Seventh Cause of Action – Gross Negligence ................................................................... 204

Page(s)

Fifty-Eighth Cause of Action - Intentional Infliction of Emotional Distress ........................ 206

Fifty-Ninth Cause of Action – Battery ................................................................................. 209

Sixtieth Cause of Action Dispart Impact ............................................................................. 212

Sixty-First Cause of Action – Accounting ........................................................................... 213

Sixty-Second Cause of Action – Unjust Enrichment ........................................................... 215

Sixty-Second Cause of Action – Injunctive Relief .............................................................. 217

Sixty-Third Cause of Action – Declarative Relief ............................................................... 218

Sixty-Fourth Cause of Action – Interpleader ...................................................................... 218

CONCLUSION ...................................................................................................................... 219

VI.    PRAYER FOR RELIEF ................................................................................................ 219

VII.   DEMAND FOR JURY TRIAL ...................................................................................... 220

VII.   VERIFICATION ................................................................................................ 220, 221

EXHIBITS

1. Claim Form for the City and County of San Francisco – Lynn Gavin

2. Claim Form for the City and County of San Francisco – Bamidele Hambolu

3. Notice Sent to California Attorney General's Office

4. Notice Sent to California State University Office of the Chancellor

5. Sunshine Ordinance Complaint #11048 Determination  - Part 1 of 2  August 23, 2011

6. First Three (3) Day Notice for usurious utility fees unsigned  August 24, 2011

7. Second Three (3) Day Notice for usurious utility fees signed Part 2  September 19, 2011

8. Sunshine Ordinance Complaint #11048 Determination Part 2 of 2  September 27, 2011

9. Sunshine Ordinance Complaint #11068 Determination - January 03, 2012

10. Sunshine Chairperson referral to DA  George Gascón  March 14, 2012

11. Shutdown of Sunshine letter from new Sunshine Chairperson   July

12. Number of Three (3) Day Notices issued for usurious utilities

Table and Authorities

Page(s)

Cases

Federal Cases

Hollister v. Soetoro 601 F.Supp. 179, 181 (D.D.C. 2009) …................................... 215

Nekole Rucker v. American Utility Management (#2:12-cv-09935-R-PJW) (Cen Dist Cal.) ..147

United States v. Wilbur, 674 F .3d 1160, 1176 (9th Cir. 2012) …........................... 72

United States v. Recio, 371 F .3d 1093, 1096 (9th Cir.2004) …............................. 72

United States v. Krasn, 614 F.2d 1229 (9th Cir.1980) …....................................... 72

United States v. Payne, 635 F.2d 643 (7th Cir. 3740 1980) ….............................. 72

Continental Baking Co. v. United States, 281 F.2d 137 (6th Cir.1960) …..................72

Swords to Plowshare v. Smith, 294 F. Supp 2d 1067, 1070-1072 (N.D. Cal. 2002) …......97, 105,
…............................................................................................................. 152, 155

Leake v. Elliott Redevelopment Phase Il, 470 F. Supp. 600,602 (W.D.N.Y. 1979) …......... 34, 150

Anderson v. Denny, 365 F. Supp. 1254, 1260 (W.D. Va. 1973) …........................... 148

Calder v. Durham Housing Authority, 433 F. 2d 998 (4th Cir. 1970) …................... 148

Court of Appeals

Timber Ridge v. Caldwell, 672, 672 S.E.2d 735 (N.C. Ct. App. 2009) …..................... 34, 151

Lakeside Gardens v. Lashay, No. 2007API246, 2008Wisc. App. LEXIS 43, *3-8 (Wis. Ct. App.
Jan. 16, 2008) …................................................................................. 97, 105, 152, 154

Driver v. Housing Authority of Racine County, 713 N.W. 2d 670, 673-675 (Wis. Ct. App. 2006)
…............................................................................................................. 137

Table and Authorities

Page(s)

Court of Appeals  Continued ...

Lamey v. Masciotra (1969) 273 Cal. App. 2d 709, 713 [78 Cal. Rptr. 344] ........................... 189

Riverview Towers Associates v. Jones, 817 A.2d 324 (N.J. Super. Ct. App Div. 2003) ......... 150

Lincoln Terrace Associates, Ltd., v. Kelly 635S.E.2d434, (N.C. Ct. App. 2006) .................. 151

Moon v. Spring Creek Apartments, 11 S.W.3d 427  (Tex. App. - Texarkana 2000) ..151, 152, 154

De La Vara v. Municipal Court (1979) 98 Cal. App. 3d 638, 640 [159 Cal. Rptr. 648] .......... 189

Kwok v. Bergen [130 Cal. App. 3d 597] [1982] ..................................................................... 189

Four Seas Inv. Corp. v. Internat'l Hotel Tenants' Assn. (1978) 81 Cal. App. 3d 604, 611 [146 Cal.

Rptr. 531] .........................................................................................................................189

University of So. Cal. v. Weiss (1962) 208 Cal. App. 2d 759, 764-765 [25 Cal. Rptr. 475].) .. 189

State Supreme Court Cases

Hedco Limited v. Blanchette, 763 A 2nd 639, 642 (R.I. 2000) (Supreme Court of R.I.) ......... 162

State Cases

Fairview Co. v. Idown, 559 N.Y.S.2d 925, 928-30 (N.Y. Civil Ct 1990) ................................ 34

Green Park Associates v. Inman, 467 N.Y.S. 2S 50, 501 (N.Y. Civ. Ct. 1983) .............. 162, 189

Federal Statues

15 U.S.C. §§ 1692-1692p et seq., ................................................................... 18, 19, 85, 88, 146

15 U.S.C. § 1692a(6) .................................................................................... 18, 83, 88, 146

Table and Authorities

Page(s)

Federal Statues Continued ...

15 U.S.C. § 1692a(3) ................................................................................ 85, 87

15 U.S.C. § 1692e (10) ...................................................... 20,85, 87, 147

42 U.S.C. Section 1983 ............................................................... 20, 48

42 U.S.C. § 12102 .............................................................................. 53

United States Housing Act, 42 U.S.C.§§1437a(a), and 1437(o) (2) ........................ 93, 108, 137

HUD handbook regulations 4350 § 8-13 (b) (2 )(c)(3) ...................................... 33

24 C.F.R. § 247.4 (a-f) ..........................................17, 36, 148, 160, 171, 176, 177, 180

24 C.F.R. § 982.453(a) ........................................................... 147, 159

24 C.F.R. § 982.453 ............................................. 148, 160, 169, 170

American with Disabilities

24 C.F.R. 100.204 (a) .................................................... 150, 151

28 C.F.R. § 35.130 ...................................................... 53, 55, 214

28 C.F.R. § 35.130 (b) (1) (vii) ....................................... 55, 57, 99, 108

28 C.F.R. § 35.130 (7) ............................................... 55, 57, 99, 100

28 C.F.R. § 35.134 ...............

28 C.F.R. § 36.207(b) ..................................................... 59, 60

28 C.F.R. § 36.206(a)( c)(b) and (3)(4) .................................. 61, 63, 64, 66, 67, 68, 69

# Table and Authorities

Page(s)

Federal Statues Continued ...

18 U.S.C. § 1961-1968 et seq ............................................................. 82

18 U.S.C. § 1341 et seq ................................................................. 84, 85

18 U.S.C. § 1343 et seq., ......................................................... 85, 88, 90, 93

18 U.S.C. § 1956 et seq., ................................................................. 91

18 U.S.C. § 1962 (d) et seq ................................................. 73, 74, 77, 78, 81

United States Constitutional Provisions

U.S. Constitution Fourth Amendment ..................................................... 92

U.S. Constitution Seventh Amendment .................................................... 93

U.S. Constitution Seventh Amendment .................................................... 95

U.S. Constitution Eighth Amendment .............................................. 98, 100

U.S. Constitution Ninth Amendment ............................................... 92, 105

U.S. Constitution Fourteenth Amendment

State Citations

(Witkin, Cal. Proc. 5Th (2008) Plead § 929, p. 344 ............................. 20, 80, 145

California Constitution Provisions

California Constitution Art I § 16 ................................................. 97, 105

Cal. Constitution, Article I § 7 ............................................. 135, 136, 139

California Constitution Art I § 3(a) .......................................... 131, 133

California Constitution Art I § 4 ........................................... 132, 133, 134

California Constitution Art 20 § 3 ......................................... 140, 141, 142

Table and Authorities

Page(s)

State Laws

Costa-Hawking Civ. Code § 1954.50 et seq., ............................................................................ 25

Bus Professions Code § 17200 et seq., ....................................................................... 142, 145, 147

Business Professions Code § 6067 et seq., ................................................... 155, 165, 176, 178

Business Professions Code § 6068 et seq., ............................................................ 155, 165, 179

Brown Act under Gov. Codes §§ 54954.3 (a) 10 and 54954.3 ................................................ 30

The Ralph M. Brown Act  Gov Code § 54950 – 54960.1 et seq., .......................................... 76

90 Day Notice for Subsidized Tenants, ( Civ Code §1954.535)

Civ Code §1954.535 et seq., ........................................... 111, 139, 160, 161, 162, 190, 191, 193

Cal. Civ. Code § 1572 et seq., ................................................................................................. 156

Cal. Civ. Code § 1711 et seq., ...................................................................................... 162, 164

Cal. Civ. Code § 1942.5 et seq., .................................................................................. 170, 171

Cal. Civ. Code § 1940.6 et seq., ........................................................................... 142, 172, 173

Cal. Civ. Code §§ 1161.1 et seq., ............................................................................. 186, 187

Cal. Civ. Code § 1162 (a) ...................................................................................187, 188, 189, 190

State Disability Laws

Government Code §§ 12955 (a) et seq., .................................................................... 112 , 114

Government Code §§ 12955 (d) et seq., .................................................................................. 118

The Unruh Civil Rights Act - Gov Code § 51 et seq., ........................ 114, 119, 120, 126, 131

Gov Code § 51 (b) .................................................................................................................. 117

Table and Authorities

Page(s)

State Disability Laws Continued ...

Gov Code § 51 (b) ................................................................................................ 117

Gov Code § 51(b) ......................................................................................... 119, 121

The Ralph Civil Rights Act - Gov Code § 51.7 ..................................... 121, 129, 131

Disabled Person's Act Civ Code § 54.1, subdivisions (b)(1) and (b)(3)(B) ... 122, 124, 125, 126

Gov Code § 54.1 (b)(3)(A) ..................................................................... 114, 126

Gov. Code § 12900 et seq.,) (FEHA) ............................................................ 114

Gov Code §  12927 (e) ................................................................................... 113

Gov Code §  12927 (g) ................................................................................... 113

Gov Code § 12980 (a) .................................................................................... 113

Gov Code § 12927 (c)(1) ............................................................................... 114

Civil Code § 3294 ................................................... 113, 117, 119, 122, 124, 127

Gov. Code § 12955 (k) ............................................ 115, 116, 119, 121, 122

Gov Code § 12948 ............................................................................... 122, 123

Local Ordinance

San Francisco Sunshine Ordinance section 67.29.6 ........................................ 27, 73

Sunshine Ordinance Section 67.36 ............................................................. 45, 184

Sunshine Ordinance Section 67.21(a) ..................... 45, 80, 128, 193, 194, 197, 198, 201

Table and Authorities

Page(s)

Local Ordinance Continued ...

Sunshine Ordinance Section 67.21(b) ..................................... 80, 122, 193, 194, 197, 198, 202

Sunshine Ordinance Section 67.25(d) ............................................ 45, 80, 128, 195, 199, 201

Sunshine Ordinance Section  67.30 ........................................................................... 185

Sunshine Ordinance Section 67.34 ..................................................................... 174, 184

Sunshine Ordinance Section 67.36 ....................................................................... 45, 184

## I. JURISDICTION

1.    This Court has jurisdiction under 28 U.S.C. §§ 1331; 1332a (1)(2(3)(4) and 28 U.S.C. § 1343.

2.    This Court has jurisdiction under 28 U.S.C. §§ 1331; 1332a (1)(2(3)(4) and 28 U.S.C. § 1343.

3.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs state law claims.

## II.    VENUE

4.    This Court is the proper venue under 18 U.S.C. § 1965 (b).

## III. PARTIES

5.    Plaintiff Lynn Gavin – mailing address P.O. Box 320515 San Francisco, CA 94132

6.    Plaintiff Bamidele Hambolu - mailing address P.O. Box 320515 San Francisco, CA 94132.

7.    Plaintiff Baby Gavin(minor) mailing address P.O. Box 320515 San Francisco, CA 94132.

8.    Defendant Constantine Dakolias, work address: Fortress Investment Group LLC

9.      Defendant Randal Nardone - 1345 Avenue of the Americas 46th Floor, New York, NY 10105.

10.      Defendant Laurence Gluck – work address:  Stellar Management 44 W. 28th Street 6th Fl  New York, New York, 10001 – 4212.

11.      Defendant Paula Katz – work address: Stellar Management 44 W. 28th Street 6th Fl New York, New York, 10001 – 4212.

12.      Defendant Ryan Jackson – work address: Stellar Management 44 W. 28th Street 6th Fl New York, New York, 10001 – 4212.

13.      Defendant Matthew Lebo – work address: Stellar Management 44 W. 28th Street 6th Fl

14.       New York, New York, 10001 – 4212

15.      Defendant Rockpoint Group, LLC., Attn: Tom Gilbane – work address: 500 Boylston Street, 21st Floor, Boston, MA 02116.

16.      Defendant American Utility Management  1550 South 52nd Street  Tempe, AZ 85251.

17.      Defendant State of California,  Attn:  AG Rob Bonta, 1300 "I" Street  Sacramento, CA 95814.

18.      Defendant California State University, Office of the Chancellor, Attn: Dr. Mildred García 401 Golden Shore, Long Beach, CA 90802.

19.      Defendant Greystar Real Estate Property Phoenix AZ - 525 East Camelback Road, Suite 300 Phoenix, AZ 85016.

20.      Defendant London Breed 1 Dr. Carlton B. Goodlett Place,  Room 200 San Francisco, CA  94102.

21.      Defendant Sean Elsbernd  1 Dr. Carlton B. Goodlett Place, Room 200 San Francisco, CA  94102.

22.      Defendant City Attorney David Chiu -1 Dr. Carlton B. Goodlett Place, Room 234  San Francisco, CA 94102.

23.      Deputy City Attorney Yvonne Meré 1 Dr. Carlton B. Goodlett Place, Room 234  San Francisco, CA 94102.

24.      Defendant Supervisor Ahsha Safai 1 Dr. Carlton B. Goodlett Place, Room 244   San Francisco, CA. 94102.

25.    Defendant Carmen Chu 1 Dr. Carlton B. Goodlett Place, Room 362  San Francisco, CA 94102.

26.    Defendant Katy Tang 49 South Van Ness Avenue 2nd Floor San Francisco, CA 94103.

27.    Defendant Dennis Herrera San Francisco Public Utilities Commission - 525 Golden Gate Avenue

San Francisco, CA 94102.

28.    Defendant Robert Rosania – work address: Maximus Real Estate Partners  - One Maritime Plaza

Suite 1900  San Francisco, CA 94111.

29.    Defendant Parkmerced Investors Properties, LLC, Attn: Robert Rosania,- One Maritime Plaza

Suite 1900  San Francisco, CA 94111.

30.    Defendant Seth Mallen – work address: Maximus Real Estate Partners  - One Maritime Plaza

Suite 1900  San Francisco, CA 94111. Home address 1301 Soda Canyon Rd, Napa, CA 94558.

31.    Defendant Bernard Polacci – work address: Maximus Real Estate Partners  - One Maritime Plaza

Suite 1900  San Francisco, CA 94111.

32.    Defendant David P. Wasserman work address: Wasserman Law Office 2900 Van Ness Avenue

San Francisco 94109.

33.    Defendant VP Kamala Harris work address : 1600 Pennsylvania Avenue, N.W. Washington, DC

20500. Home address: 1 Observatory Circle N.W. Washington, DC 20008-3619.

34.    Defendant District Attorney George Gascón - work address: 211 West Temple Street, Suite 1200

Los Angeles, CA 90012.

35.    Defendant Gavin Newsom  -  work address:  1021 O Street, Suite 9000, Sacramento, CA 95814

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## NATURE OF THE CASE

36.     San Francisco, California local politics mired in administration corruption.

37.     The administration corruption is referred to as "pay-to-play."

38.     This "pay-to-play" politics deprives residents in San Francisco of honest services from elected officials.

39.     The political corruption is so blatant that it impacts all levels of local government.

40.     The former Mayor of San Francisco, Edwin M. Lee once referred to elected officials in San Francisco s the "City Family."

41.     There have been numerous investigations by the Federal Bureau of Investigations hereinafter ("FBI") that involves bribery to prostitution by city employees.

42.     On March 18, 2024 Harlan Kelly the former general manager of San Francisco Public Utilities Commission (hereinafter SFPUC) is sentenced to 4 ½ years in federal prison on corruption charges.

43.     This case involves 1,538 rent-controlled townhome apartments that will be demolished under a redevelopment agreement that is approved by San Francisco Board of Supervisors hereinafter ("SFBOS").

44.     Parkmerced is the largest apartment complex in Northern California with 3,221 apartments.

45.     Parkmreced is the twin complex to Park La Brea located in Los Angeles, CA with over 4,000 apartments.

46.     Parkmerced is owned by multiple corporations and private individuals under ("Parkmerced Investors Properties, LLC.,").

47.     Parkmerced redevelopment agreement will demolish 1,538 rent-controlled townhome apartments and replace them with 8,900 luxury condos.

48.     Parkmerced do not disclose to Plaintiff ("Gavin's") family the townhouse they rent will be demolished pending approval of Parkmerced's redevelopment agreement submitted to San Francisco Planning Department hereinafter ("SF Planning Dept.").

49.     In Fall 2009 Parkmerced submits a redevelopment agreement to SF. Planning Dept.

50.     There are no meters to measure water usage for residents at Parkmerced.

51.     Not all residents at Parkmerced are required to pay utility fees.

52.     In correlation with the submission of Parkmerced's redevelopment agreement to SF Planning Dept., Parkmerced contracts with American Utility Management hereinafter ("AUM") to issue third-party utility bills for (water, sewer and garbage).

53.     In Spring of 2010 is the beginning of voluminous Three (3) Day Notices for usurious utility fees (water, sewer and garbage) by Parkmerced.

54.     Issuance for the usurious utility fees (water, sewer and garbage) are one or more years in arrears.  The utility fees in arrears for some residents can exceed $1,000 or $2,000.

55.     Plaintiffs are wrongfully evicted for usurious utility fees lose security deposits are are ineligible for the right-to-return to reside in the new condos that will be built.

56.     Issuance of the Three (3) Day Notices violates the procedural protections written into the Plaintiffs federal subsidized Housing Assistant Payment hereinafter (HAP) contract issued by U.S. Department of Housing and Urban Development hereinafter ("HUD").

57.     Issuance of the Three (3) Day Notices violates the procedural protections written into the Housing Assistance Payment hereinafter ("HAP") subsidized contract that requires strict compliance under 24 C.F.R. § 247.4 (a-f).

58.    In addition issuance of the Three (3) Day Notices violates residents rights enumerated in

the United States Constitution under the Fourteenth Amendment, "Due Process and Equal

Protection."

59.    In addition, issuance of the Three (3) Day Notices for usurious utility fees (water, sewer

and garbage) violates the rights of subsidized and non-subsidized Parkmerced residents who are

consumers under the Fair Debt Collection Practices Act hereinafter 15 U.S.C. §§ 1692-1692p et

seq.

60.    On the day San Francisco Board of Supervisors hereinafter ("SFBOS") approves vote to

approve Parkmerced's redevelopment agreement during the official proceedings there are

multiple violations of state and federal laws including the Racketeering Influenced and

Corruption Organizations Act hereinafter ("RICO").

61.    The City and County of San Francisco hereinafter ("CCSF") is paid $300 million for

passage of the Parkmerced redevelopment agreement.

62.    Issuance of the Three (3) Day Notices are being used as a form of constructive eviction to

deny residents who have been historically marginalized such as:

elderly people on fixed incomes, disabled civilians and disabled transverse with federal

subsidized Housing Choice Vouchers, people with a federal subsidized Housing Choice Voucher

and; non-native English speakers.

63.    To date there has been over 1,200 plus Three (3) Day Notices issued for usurious utility

fees (water, sewer and garbage). See the following page #

64.    Parkmerced's redevelopment agreement will demolish 1,538 rent-controlled apartments.

65.    The number of Three (3) Day Notices issued thus-far are 80-percent of the 1,538

townhome apartments that will be demolished.

**Legal Violations**

66.     This suit is based on "official misconduct" by Defendants ("San Francisco Board of Supervisors") determined by the San Francisco Ordinance Task Force during official procedures in the approval of Defendants ("Parkmerced Investors Properties, LLC") redevelopment agreement.

67.     In addition, this suit is also based on the defective notices Defendants ("Parkmerced Investors Properties, LLC.,") uses to evict Parkmerced residents from their homes for usurious utility fees (water, sewer and garbage) as a ruse to make residents ineligible for relocation benefits.

68.     To date issuance of over 1,200 Three (3) Notices are 85 percent of the 1,538 townhome apartments Defendants San Francisco Board of Supervisors approves to demolish in regards to the Parkmerced Redevelopment Agreement.

69.     Defendants ("Parkmerced Investors Properties, LLC.,") contract with Defendant ("American Utilities Management")  hereinafter ("AUM") for third-party billing of utility bills.

70.     Defendant ("AUM") is attempting to collect debts on behalf of another as defined by 15 U.S.C. § 1692a(6). By so doing Defendant ("AUM") initiates multiple legal obligations under the Fair Debt Collections Practices Act hereinafter ("FDCPA") 15 U.S.C. §§ 1692- 1692p et seq., each of which Defendant ("AUM") fails to meet.  Through their deceptive notices, Defendant ("AUM") deprives Plaintiffs of notice of their right to dispute usurious utility fees and hampers their ability to challenge eviction proceedings that allow procedural due process and debt collection efforts.

71.     Defendants ("Parkmerced Investors Properties, LLC.,") tenant attorneys non-disclosure of Plaintiff ("Gavin's") family federal subsidized Housing Choice Voucher issued by HUD is a

false statement and violates 15 U.S.C. § 1692e (10), which provides that "[a] debt collector may

not use any false, deceptive or misleading statements in connection with collection of any."

72.    Defendant ("AUM") non-disclosure of being a debt collector on behalf of their client

Defendant ("Parkmerced Investors Properties, LLC.,") is a false statement and violates 15 U.S.C.

§ 1692a (6): "The injured party may bring an action based on fraud or mistake more than 3 years

after the transaction if the party is able to show that he or she did not discover the facts, and

could not with reasonable diligence have discovered them, prior to 3 years before the action."

(Witkin, Cal. Proc. 5Th (2008) Plead § 929, p. 344."

73.    Plaintiff ("Gavin's") family have made numerous attempts to redress violations under the

Federal and State Constitutions and laws plead the following in this Complaint:

74.    The equitable tolling exception extends the statute of limitations when a plaintiff pursues

one of the many possible remedies in good faith.

75.    The fraudulent concealment exception extends the clock when a defendant's deceptive

conduct causes the time on a claim to expire.

76.    The delayed discovery exception postpones accrual of the limitations period until the

plaintiff discover, or has reason to discover, the cause of action.

77.    Defendants, under color of statue, ordinance, regulation, custom, and/or usage, have

subjected , or have caused to be subjected, Plaintiffs deprivation of rights, privileges, or

immunities secured by the Federal and State Constitutions and laws – especially rights to due

process and therefore Defendants collective actions are liable to Plaintiffs pursuant to 42 U.S.C.

Section 1983.

///

///

78.    Here is the most recent data for Three (3) Day Notices issued for usurious utility fees

79.    (water, sewer and garbage) filed as breach of lease.

Three (3) Notices for Usurious Utility Fees

| Year | Number of Breaches |
|------|--------------------|
| 2024 | currently being analyzed |
| 2023 | 04 breach of lease;   nuisance |
| 2022 | 05 breach of lease;   nuisance |
| 2021 | 03  breach of lease;   nuisance |
| 2020 | 50 breach of lease;    nuisance |
| 2019* | over 300 breach of lease;  nuisance |
| 2018 | nearly 100 breach of lease;  nuisance |
| 2017 | nearly 80 breach of lease;  nuisance |
| 2016 | 60 breach of lease;    nuisance |
| 2015 | 40 breach of lease; nuisance |
| 2014 | over 120 breach of lease;  nuisance |
| 2013 | over 130 breach of lease;  nuisance |
| 2012 | 08 breach of lease;nuisance |
| 2011* | Passage of Redevelopment Agreement  May 24, 2011 |
| 2011* | nearly 200 breach of lease;  nuisance |
| 2010* | over 170 breach of lease;   nuisance |
| 2009* | Fall - Submission of Redevelopment Agreement to SF Planning Dept |
| 2009 | 08 breach of lease;  nuisance |
| 2008 | 05 breach of lease;   nuisance |

---

80.            1,200 plus Total

81.    Unless otherwise indicted, the use of any Defendant's name in this Complaint includes

individuals, heirs, agents, employees, officers, members, directors, successors, investors,

assigns,subsidiaries, principals, trustees, sureties, subrogees, representatives, and insures or
otherwise of Defendants 1-100 plus, inclusive are unknown to Plaintiffs.

82.    Plaintiffs will seek leave to amend this Complaint to allege their true names and
capacities when they are ascertained.

## IV.    STATEMENT OF FACTS

83.    A few days before March 01, 2010 Defendant Parkmerced accepts Plaintiff's Housing
Choice Voucher from the U.S. Department of Housing and Urban Development (hereinafter
HUD).

84.    Parkmerced does not disclose to Plaintiff ("Gavin's") family that Plaintiff ("Gavin's")
family home will be demolished pending the approval of Parkmerced's Development Agreement
prior to renting Plaintiff ("Gavin's") family the apartment.

85.    Defendant ("Parkmerced") does not disclose to San Francisco Housing Authority that
apartments with subsidized tenants will be demolished pending the approval of Parkmerced's
Development Agreement by the San Francisco Board of Supervisors.

86.    Defendant ("Parkmerced") tells Plaintiff ("Lynn Gavin") that Plaintiff "Gavin's") family
can move into the townhouse unit on March 01, 2010.

87.    On March 01, 2010 Plaintiff ("Gavin's") family begin their move into Parkmerced.

88.    On March 01, 2010 Plaintiff ("Gavin") turns on the oven to warm up for the pizza the
family will eat for dinner.

89.    On March 01, 2010 when Plaintiff ("Gavin") opens the oven door to see if the oven was
warm enough for the pizza a fire ball hits Plaintiff ("Gavin") in the face and burns Plaintiff
("Gavin's") eye lashes, eyebrow, cheek bones and hair on the top of her head.

90.     In Spring of 2010 the large issuance of Three (3) Day Notices for usurious utility fees
(water, sewer and garbage) to residents of Parkmerced begins.

91.     During the summer of 2010 Plaintiff Gavin begins to hear rumors that apartments will
demolished by Defendant Parkmerced Investors Properties, LLC.

92.     At the end of 2010 173 Three (3) Day Notices are issued to residents at Parkmerced for
usurious utility fees (water, sewer and garbage).

93.     Residents at Parkmerced are concerned about the redevelopment agreement and how it
will impact their homes.

94.     Some Parkmerced residents attend meetings at the San Francisco Planning Commission
but they run late into the evening.

95.     Whenever Parkmerced tenants attend meetings at San Francisco Planning Commission
items about Parkmerced are moved to the bottom of the agenda.

96.     In December 2010 the San Francisco Planning Commission holds its first and only
meeting about Parkmerced's redevelopment agreement at San Francisco State University.

97.     This is the largest participation of Parkmerced's residents at a SF Planning Commission
meeting.

98.     San Francisco State University is very close to Parkmerced.

99.     On February 05, 2011 Parkmerced discriminates against which tenants it invites to the
meeting.

100.    On February 05, 2011 Parkmerced invites tenants who have resided at Parkmerced for a
decade or longer to a meeting on the property near Lake Merced.

101.    Residents who have resided at Parkmerced for a decade or longer do not pay the usurious utility fees (water, sewer and garbage).

102.    On February 05, 2011 Parkmerced invites Defendant ("Michael Yarne, Esq.,") the Project I Mgr from the Office of Workforce Economic Development hereinafter (OWED) to speak with residents of Parkmerced about the redevelopment plans for Parkmerced.

103.    On February 05, 2011 Plaintiff ("Gavin") learns that a redevelopment application was submitted to the San Francisco Planning Department ("hereinafter SF Planning Dept") and that Plaintiff ("Gavin's") family home will be demolished.

104.    On February 07, 2011 Parkmerced employee Defendant ("Bernard Polacci") hereinafter ("Mr. Polacci") sends Plaintiff ("Gavin") a letter that states there was some kind of mistake regarding the meeting that was held on Feb. 05, 2011 and that all tenants were welcomed.

105.    In the Spring of 2011 there is a lot of fear among residents of Parkmerced because it is now a fact that there will be a demolition of the townhome apartments will be demolished.

106.    Issuance of the usurious Three (3) Day Notices continues and Parkmerced residents do not trust Parkmerced being forthright with their intentions on the demolition of the apartments.

107.    A housing advocacy non-profit in San Francisco stages a sit-in at SF Planning Dept. demanding that all of the Parkmerced residents living in the townhome apartments be notified that pending approval of Parkmerced's Development Agreement the apartments would be demolished.

108.    It is late Spring when SF Planning sends out the letter regarding the demolition of the 1,538 townhome apartments.

109.   Defendant ("Parkmerced")  are giving people at Parkmerced with residency of a decade or longer new leases for the right-to-return and live in the new condos.

110.   Plaintiff ("Gavin's") has resided at Parkmerced for 17 months and was never late with rent,  however, Plaintiff ("Gavin's") family does not receive a new lease for the right-to-return and live in a new condo.

111.   Plaintiff ("Gavin's") conversation with neighbors reveal they are fearful that Parkmerced's Redevelopment Agreement will be rushed through without regard for the residents or the environment.

112.   Neighbors who have experience with being previously unhoused confide in Plaintiff ("Gavin") if they become displaced they will commit suicide.

113.   Defendants ("Parkmerced") redevelopment agreement states that all 1,538 rent-controlled townhome apartments will be replaced on a 1-to-1 ratio with the new condos.

114.   This contradicts the rent-controlled law under Costa-Hawking Civ Code § 1954.50 et seq., that states there is no rent-control on apartments built after 1979.

115.   There is no rent-control on buildings built after 1979 unless the state law is changed.

**Legal Violations**

116.   This suit is based on "official misconduct" by Defendants San Francisco Board of Supervisors determined by the San Francisco Ordinance Task Force during procedures in the approval of Defendants ("Parkmerced Investors Properties, LLC") redevelopment agreement.

117.   In addition, this suit is also based on the defective notices Defendants ("Parkmerced Investors Properties, LLC.,") uses to evict Parkmerced residents from their homes for usurious utility fees (water, sewer and garbage).

118.    In 2005 Defendant Robert A. Rosania purchases Parkmerced.

119.    Defendant ("Robert A. Rosania") takes loan on Parkmerced for $600 million dollars which is most of the equity in the property.

120.    Defendant ("Robert A. Rosania") restructures the title to Parkmeced as Parkmerced Investors Properties, LLC.

121.    For the first time in its 75 plus years of existence Parkmerced is sold as parcels to corporations, and individual people.

A.    **The Conspiracy**

122.    Defendant ("Robert A. Rosania") almost defaults on his Parkmerced loan.

123.    Defendant ("Fortress Investment Group") pays Defendant's (Robert A. Rosania") Parkmerced loan and becomes an investor in Parkmerced Investors Properties, LLC.

124.    In Spring 2011 San Francisco County Transportation Authority hereinafter ("SFCTA") agree at the meeting to accept a $50,000 contribution from Defendant ("Parkmerced") for a project in Defendant Carment Chu's district that is fully funded.

125.    Defendants ("SFBOS") capacity as Supervisors is the legislative branch of city government.

126.    The San Francisco County Transportation Authority Commissioners are members elected to San Francisco Board of Supervisors.

127.    Defendants ("SFCTA") Commission role is to oversee all aspects of transportation in the City and County of San Francisco.

128.    Defendants ("SFCTA") Commission delegate daily operations of public transportation to San Francisco Municipal Transportation Authority hereinafter ("SFMTA").

129.    San Francisco Sunshine Ordinance section 67.29.6 requires gifts of more than $100 be

posted on the Department's web site.

130.    In March 28, 2011 after the Defendant ("SFMTA") employees write a memorandum to

Defendant ("Seth Mallen") an employee of Defendant ("Stellar Management") about the $50,000

contribution his employee will make to Supervisor Chu's district.

131.    San Francisco Sunshine Ordinance section 67.29.6 requires gifts of more than $100 be

posted on the Department's web site.

132.    Defendant ("SFMTA") employees memorandum is a part of the 14 "phantom pages" of

revisions that will be inserted into Defendant's ("Parkmerced") redevelopment agreement on the

day Defendants ("SFBOS") vote on the redevelopment agreement.

133.    On May 12, 2011 the San Francisco Superior Court Civil Grand Jury mails a letter to the

mayor's office stating that as written Defendants ("Parkmerced") redevelopment agreement

statutory rights of Parkmerced residents.

134.    On May 12, 2011 the San Francisco Superior Court Civil Grand Jury mails a letter to the

city attorney's office stating that as written Defendants ("Parkmerced") redevelopment agreement

statutory rights of Parkmerced residents.

135.    On May 12, 2011 the San Francisco Superior Court Civil Grand Jury mails a letter to the

SF Board of Supervisors office stating that as written Defendants ("Parkmerced") redevelopment

agreement statutory rights of Parkmerced residents.

136.    On May 12, 2011 the San Francisco Superior Court Civil Grand Jury mails a letter to the

Clerk of the Board's office stating that as written Defendants ("Parkmerced") redevelopment

agreement statutory rights of Parkmerced residents.

137.    On May 12, 2011 the San Francisco Superior Court Civil Grand Jury mails a letter to the

General Accounting office stating that as written Defendants ("Parkmerced") redevelopment

agreement statutory rights of Parkmerced residents.

138.    The information about this $50,000 contribution is concealed from members of the public

until after Defendants ("SFBOS") vote to approve Defendants ("Parkmerced Investors

Properties, LLC., ) redevelopment agreement.

139.    Michael Yarne, Esq., of the Office of Workforce Economic Development hereinafter

("OWED") is the Project Manager I assigned to work on the Parkmerced Development

Agreement.

140.    On the weekend of May 21, 2011 and May 22, 2011 Michael Yarne, Esq., conspires with

Defendants ("Parkmerced") and ("SFBOS") on the Land Use Economic Development

Committee to obscure 14 "phantom pages" of revisions to the Parkmerced redevelopment

agreement from the public.

141.    Defendant Michael Yarne, Esq., calls each Supervisor on the Land Use Economic

Development Committee and asks the Supervisors to adopt the 14 pages of revisions to

Defendant ("Parkmerced's") redevelopment agreement that will be presented at their next Land

Use Economic Development Committee meeting.

142.    The Land Use Economic Development Committee is moved to coincide with the day the

Full Board of Supervisors meet to vote on Defendant ("Parkmreced's") redevelopment

agreement.

143.    On Tuesday, May 24, 2011 President of the Board of Supervisors Defendant David Chiu,

Esq., and asks Supervisors on the Land Use Economic Development Committee to adopt the 14

"phantom pages" of revisions and to recommend them the pages to the full Board of Supervisors without any changes.

144.    On Tuesday, May 24, 2011 the Supervisor of the district where Parkmerced is located Defendant Supervisor ("Sean Elsbernd") accompanies Defendant Supervisor ("David Chiu") to the Land Use Economic Development Committee meeting.

145.    A motion is made and passed to insert the 14 "phantom pages" of revisions into Defendant's ("Parkmerced") redevelopment agreement without any changes and to recommend the revisions to the full Board of Supervisors.

146.    On May 24, 2011 the meeting with Defendants the full ("SFBOS") meets about 2 hours after the Land Use Economic Development Committee.

147.    On May 24, 2011 at Defendants full ("SFBOS") meeting the issue is raised by one of the Defendants a Supervisor that the adaptation of the 14 pages of revisions could be a possible violation of the Ralph M. Brown Act hereinafter the (Brown Act) state law that pertains to public meetings.

148.    A question is presented to a Deputy City Attorney hereinafter ("DCA") Cheryl S. Adams Esq., about the legality of the procedure.

149.    Another Supervisor raise the issue that it is not legal.

150.    Defendant DCA Adams, Esq., states there are no violations of the Brown Act.

151.    The issue is raised by a Supervisor that there is a possible violation of San Francisco Sunshine Ordinance.

152.    Defendant DCA Charles R. Sullivan states he wrote the 14 "phantom pages" of revisions the night before the meeting.

153.    Defendant DCA Adams, Esq., states there are no violations of the Sunshine Ordinance.

154.    Defendant City Attorney Dennis Herrera hereinafter ("CA") is present throughout the entire meeting and does not make any comments.

155.    Defendant Supervisor ("David Chiu") is states that there will be no public comments made on the Parkmerced Development Agreement in the chambers or peole will be escorted out the San Francisco Deputies.

156.    Members of the public are very upset that they are denied the opportunity to make a comment on the demolition of their home.

157.    Defendant Supervisor Carmen Chu does not recuse herself from the vote on Defendant ("Parkmerced's") redevelopment agreement.

158.    Defendant Supervisor ("Carmen Chu") does not disclose that her district will benefit from the passage of Parkmerced's redevelopment agreement.

159.    Defendants ("SFBOS") in a 6/5 vote approve the Parkmerced redevelopment agreement.

160.    The Defendant City and County of San Francisco is paid $300 million for passage of the Parkmerced Development Agreement.

161.    On or about the first week of June 2011, community newspapers are writing articles that the Defendants ("SFBOS") on the Land Use Economic committee may have violated the Brown Act.

162.    Between May 14, 2011 to July 21, 2011 Plaintiff ("Gavin") submits by mail or facsimile eight request for public information and public records for Defendants ("Parkmerced's") redevelopment agreement.

163.    On June 02, 2011 Plaintiff ("Gavin") mails a letter to Senior Environmental Planer Richard Cooper hereinafter ("Mr. Cooper") and request all information related to Parkmerced redevelopment agreement.

164.    On June 03, 2011 Defendant ("Mr. Cooper")  receives Plaintiff ("Gavin's") letter.

165.    On June 10, 2011 Plaintiff ("Gavin") alleges former Mayor Edwin M. Lee signs off on

the Parkmerced Development Agreement despite the controversy in the newspapers.

166.    Newspapers have written that the Brown Act under Gov. Codes §§ 54954.3 (a) 10 and

54954.3.

167.    On June 22, 2011 Defendant ("Mr. Cooper") responds to Plaintiff ("Gavin's") request for

Parkmerced redevelopment documents.

168.    On June 22, 2011 Defendant ("Mr. Cooper") has a box of Parkmerced documents

delivered to Plaintiff ("Gavin's") family home and no cost and without a note.

169.    On June 23, 2011 Plaintiff ("Gavin") faxes a letter to Defendant ("Mr. Cooper")

requesting the 14 "phantom pages" of revisions inserted into the Parkmerced redevelopment

agreement on the day Defendants ("SFBOS") approves the project.

170.    On June 29, 2011 Plaintiff ("Gavin") also submits a personal request to Defendant ("SF

Planning Defendant ) employee Defendant ("Elizabeth Watty").

171.    On June 29, 2011 plaintiff ("Gavin") requests all of the documents on the Parkmerced

redevelopment agreement explaining that Defendant ("Mr. Cooper") did not send the 14

"phantom pages" of revisions.

172.    Plaintiff ("Gavin") does not ever receive a response from Defendant ("Elizabeth Watty").

173.    Defendant ("Bernard Polacci") does not respond to Plaintiff ("Gavin's") request for a

reasonable accommodation.

174.    Plaintiff ("Gavin") contacts SFMTA about a disabled parking space in front of Plaintiff's

home.

175.    In July 2011 Plaintiff ("Gavin's") family files Sunshine complaint #11048 against elected officials involved in violation of the open meeting laws under the Ralph M. Brown Act and San Francisco Sunshine Ordinance.

176.    On July 07, 2011, Plaintiff Gavin submits to Elizabeth Watty a detailed list of documents requested on June 29, 2011.

177.    On July 11, 2011 Operations & IT Administrator Lulu Hwang notifies Plaintiff ("Gavin") the requested materials totaled approximately 3500 pages.

178.    On July 11, 2011, Lulu Hwang offers to produce electronic copies for the documents on a compact disc for a duplication fee of $0.25 for paper copies at $340.

179.    Plaintiff ("Gavin") requests a reasonable accommodation for the cost of $340 due to an economic hardship.

180.    On July 27, 2011, SF Planning Department sends Plaintiff ("Gavin") a form to complete for consideration of a fee waiver based on financial hardship.

181.    On July 27, 2011, SF Planning Department sends Plaintiff ("Gavin") a form to complete for consideration of a fee waiver based on financial hardship.

182.    Plaintiff ("Gavin") does not complete the form alleging violation of ADA and HIPPA rights.

183.    On August 18, 2011 Kathleen McEvoy at the SFMTA responds to Plaintiff ("Gavin's") letter about a designated disabled parking space and states where it can be located.

184.    On August 23, 2011 Plaintiff ("Gavin's") family Sunshine complaint #11048 Part 1 of 2 is heard by San Francisco Sunshine Ordinance Task Force hereinafter (SOTF).

185.    On August 23, 2011 Plaintiff ("Gavin's") family is surprised to see Defendant ("Bernard Polacci") Defendant ("Parkmerced Investors Properties") employee is present at Plaintiff ("Gavin's") family Sunshine hearing.

186.    On August 23, 2011 San Francisco Sunshine Ordinance Task Force finds Defendant Supervisor ("Eric Mar") is in violation of the Sunshine Ordinance.

187.    The San Francisco Sunshine Ordinance Task Force determination is historic in that it is the first time a current Supervisor is found in violation of the Sunshine Ordinance.

188.    On August 23, 2011 San Francisco Sunshine Ordinance Task Force sets a date for September 27, 2011 to hear Sunshine #11048 Part 2 of Plaintiff ("Gavin's") family complaint.

189.    On August 23, 2011 Defendant ("Bernard Polacci") is seen scurrying from the hearing for Sunshine complaint #11048.

**B.    Breach of Contract - HUD Termination of Tenancy Notices Regulations**

190.    HUD handbook regulations 4350 § 8-13 (b) (2 )(c)(3), that are to be strictly followed for termination of tenancy in accordance with the Housing Assistance Payment hereinafter (HAP) contract.

a)    Notice must state the date the tenancy is terminated;

b)    State reasons for the eviction with sufficient specificity to enable the tenant to prepare a defense;

c)    Advise the tenant that if he or she remains in the apartment on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action;

d)    Advise the tenant that he or she has 10 days in which to discuss the proposed termination of tenancy with the landlord;

191.   Advise the tenant that persons with disabilities have the right to request reasonable

accommodation to participate in the hearing process;

f)      Landlord must also comply with all of the state requirements.

192.   "No termination is valid unless Parkmerced has complied with the federal notice

requirements. See 24 C.F.R. § 247.4(a) (2011); Leake v. Elliott Redevelopment Phase II, 470 F.

Supp. 600,602 (W.D.N.Y. 1979): See also (finding termination notice failed to comply with the

requirements); Timber Ridge v. Caldwell, 672, 672 S.E.2d 735 (N.C. Ct. App. 2009); Fairview

Co. v. Idown, 559 N.Y.S.2d 925, 928-30 (N.Y. Civil Ct 1990) (finding termination not

sufficiently specific). See Three (3) Day Notices Exhibits #

193.   Defendant ("Parkmerced Investors Properties, LLC.,) landlord law firm Defendant

("Wasserman & Stern, LLP") uses a state statute to circumvent federal and state laws and federal

regulations.

194.   On August 24, 2011 Defendants ("Parkmerced") have the security guard riding on a

Sedgeway Hoverboard to place an unsigned Three (3) Day Notice for usurious utility fees (water,

sewer and garbage) for the amount of $1,586.72 on Plaintiff ("Gavin's") front door knob.

195.   This is the first time Plaintiff ("Gavin's") family is aware of any usurious utility fees after

residing at Parkmerced for 17 months.

196.   On August 24, 2011 Defendants ("Parkmerced Investors Properties, LLC.,") Three (3)

Day Notices does not comply with the termination requirements under 24 C.F.R.§ 247.4 (a-f):

"HUD Termination Requisite Notice Requirements," of Plaintiff ("Gavin's") subsidized Housing

Assistance Payment hereinafter (HAP) contract Part C that Defendants represents signed with

Plaintiff ("Gavin").

197.    HUD requires strict compliance with all termination notices for eviction in accordance
with the HAP contract part C, tenants' rights and federal regulations.

198.    On August 24, 2011 Defendants ("Parkmerced's") Three (3) Day Notice is unsigned by
Defendants in the amount of $1,586.92 without enough specificity to explain calculation of the
amount.

199.    On August 24, 2011  Defendants ("Parkmerced's") Three (3) Day Notice left on Plaintiff
("Gavin's") front door knob is non-compliant with the law thus, defective.

200.    On August 24, 2011 Plaintiff ("Gavin") is shocked that there is an eviction notice place of
the family's front door and begins to experiences Plaintiff ("Gavin's")  heart palpitations.

201.    On August 24, 2011 Plaintiff ("Gavin") makes an appointment to see Plaintiff ("Gavin's")
primary care physician in regards to the heart palpitations.

202.    On August 25, 2011 Plaintiff ("Gavin") goes to Parkmerced's office and asks the
employees to explain the calculation of the usurious utility bill for (water, sewer and garbage).

203.    On August 25, 2011 Parkmerced employees said they could not speak to Plaintiff
("Gavin") because of the Three (3) Day Notice issuance.

204.    On August 25, 2011 Plaintiff ("Gavin's") family faxes Defendant ("Robert A. Rosania") a
letter to request a "reasonable accommodation" to make installment payments on the usurious
utility fees (water, sewer and garbage).

205.    There is electronic information that shows reveals Defendant's ("Parkmerced Investors
Properties LLC.,") employees urge Defendant (Robert A. Rosania") to grant Plaintiff ("Gavin's")
"reasonable accommodation" request.

206.    Defendant ("Robert A. Rosania") does not respond to Plaintiff ("Gavin's) family request for a reasonable accommodation to make installment payments on usurious utility fees, does not engage in the interactive process.

207.    There are no meters to measure water usage by Parkmerced residents.

208.    Plaintiff ("Gavin's") family has never been a problem at Parkmerced and pays rent on time each month.

209.    Plaintiff ("Gavin") is always told by Parkmerced employees that payment for rent is paid in full.

210.    Not all of the residents at Parkmerced pay usurious utility fees (water, sewer and garbage).

211.    San Francisco State University is an investor in Parkmerced Investors Properties, LLC.

212.    Students at San Francisco State University do not pay usurious utility fee (water, sewer and garbage).

213.    On September 01, 2011 Plaintiff ("Gavin") pays rent and has a separate payment for beginning installment payments for the usurious utility fees.

214.    The second Three (3) Day Notice is one left on Plaintiff ("Gavin's") family front door one week before Plaintiff ("Gavin's) family second hearing for Sunshine Complaint #11048 in regards to procedural actions taken by Defendants ("San Francisco Board of Supervisors") on the vote to approve Defendants redevelopment agreement.

215.    On September 19, 2011 Defendants ("Parkmerced Investors Properties LLC") Three (3) Day Notices do not comply with the termination requirements under 24 C.F.R.§ 247.4 (a-f): "HUD Termination Requisite Notice Requirements," of Plaintiff ("Gavin's") subsidized Housing

Assistance Payment (hereinafter HAP) contract Part C that Defendants represents signed with

Plaintiff ("Gavin").

216.    On September 19, 2011 Defendants ("Parkmerced Investors Properties LLC") place a

second Three (3) Day Notice left on Plaintiff ("Gavin's") front door knob that is defective.

217.    HUD requires strict compliance with all termination notices for eviction in accordance

with the HAP contract part C, tenants' rights and federal regulations.

218.    The second Three (3) Day Notice left on Plaintiff ("Gavin's") front door is for the amount

of $ 1,110.72 and it is $400 less than the first notice without any explanation.

219.    On September 19, 2011 Plaintiff ("Gavin") goes to the office to ask how the usurious

utility fees are determined and does not get an answer.

220.    On September 19, 2011 Defendants ("Parkmerced") return Plaintiff ("Gavin's") family

rent for the month of September and the installment payment for the usurious utility fees.

221.    On September 27, 2011 at hearing for Sunshine Complaint #11048 the Sunshine

Ordinance Task Force determines the remaining 3 San Francisco Board of Supervisors at the

Land Use Economic Development Committee are in violation of the Sunshine Ordinance.

222.    On September 27, 2011 San Francisco Ordinance Task Force makes another historic

decision in that there are now four current Board of Supervisors in violation of the Sunshine

Ordinance.

223.    On September 27, 2011 the San Francisco Ordinance Task Force decision will

reverberate throughout City Hall.

224.    Retribution from the Board of Supervisors culminates in the shutdown of the Sunshine

Ordinance Task Force.

225.    All elected officials and department heads are required to take training on the Sunshine Ordinance one every two years.

226.    Upon completion of the training elected officials and department heads are required to sign an affidavit to uphold Sunshine.

227.    The San Francisco Sunshine Ordinance "supersedes" all ordinances in the City and County of San Francisco.

228.    On September 30, 2011 Defendant ("David Wasserman, Esq.,") the tenant attorney for Defendants ("Parkmerced Investors Properties, LLC.,") files an unlawful detainer against Plaintiff ("Gavin's") family.

**C.    Fraud Upon the Court**

229.    On September 30, 2011 Defendant ("David Wasserman, Esq.,") the tenant attorney for Defendants ("Parkmerced Investors Properties, LLC.,") does not disclose to San Francisco Superior Court that Plaintiff ("Gavin's") family has a federal subsidized housing Choice Voucher.

230.    On September 30, 2011 Defendant ("David Wasserman, Esq.,") the tenant attorney for Defendants ("Parkmerced Investors Properties, LLC.,") does not file a copy Plaintiff ("Gavin's") family federal Housing Choice Voucher contract with the complaint because Defendant states it is lost.

231.    On September 30, 2011 Defendant ("David Wasserman, Esq.,") the tenant attorney for Defendants ("Parkmerced Investors Properties, LLC.,") said that he made a diligent search but could not find the contract.

232.    On September 30, 2011 Defendant ("David Wasserman, Esq.,") the tenant attorney for Defendants ("Parkmerced Investors Properties, LLC.,") does not disclose to San Francisco

Superior Court that the Defendant issues 2 Three (3) Day Notices to Plaintiff ("Gavin's) family for different amounts.

233. In September 2011 Defendant Deputy City Attorney ("Yvonne Meré") of the Code Enforcement Unit writes an article in a community newspaper on the voluminous issuance of Three (3) Day Notices at Parkmerced.

234. In the article Defendant Deputy City Attorney ("Yvonne Meré") provides information to contact her office to discuss this issue.

235. In November 2011 with the passage of Defendants ("Parkmerced Investors Properties, LLC.,") development agreement many residents who reside in the townhome apartments are very concerned about the lack of transparency by Defendants.

**D.**   **Aided and Abetted**

236. In November 2011 a few disabled veterans confide in Plaintiff ("Pastor Gavin") that they would commit suicide if they became homeless again.

237. November 15, 2011 Plaintiff ("Gavin") files an American with Disabilities Act complaint against Defendants ("Parkmerced Investors Properties, LLC") with the San Francisco Human Rights Commission.

238. On December 01, 2011 Plaintiff ("Gavin") accompanies a neighbor who made an appointment with Defendant Deputy City Attorney hereinafter (DCA) ("Yvonne Meré") to discuss the voluminous Three (3) Day Notices for usurious utility fees (water, sewer and garbage) at Parkmerced.

239.    Defendant DCA ("Yvonne Meré, Esq.,") states that the City Attorney meets with all of

the deputy city attorneys on Thursday mornings and she would discuss this issue with Defendant

CA ("Dennis Herrera, Esq.,") and would get in touch with Plaintiff ("Gavin") and the neighbor.

240.    On December 02, 2011 Plaintiff ("Gavin") mails Defendant DCA ("Yvonne Meré, Esq.,")

a thank you card.

241.    On December 08, 2011 Plaintiff ("Gavin") and the neighbor are patiently waiting to hear

from Defendant DCA ("Yvonne Meré, Esq.,") in regards to the voluminous Three (3) Day

Notices.

242.    On December 15, 2011 Defendant DCA ("Yvonne Meré, Esq.,") does not contact

Plaintiff ("Gavin") or the neighbor that arranged the meeting about the issuance of voluminous

Three (3) Day Notices.

243.    Issuance of the Three (3) Day Notices causes a great deal of pandemonium as recipients

of the notices are terrorized by the possibility of being evicted from their homes and becoming

homeless.

244.    On December 22, 2011 a neighbor of Plaintiff ("Gavin's") who is a disabled veteran with

Post Traumatic Stress Disorder (hereinafter PTSD)  and depression knocks on the door and asks

if they could speak with Plaintiff ("Gavin") about the Three (3) Notices for usurious utility fees.

245.    On December 22, 2011 the ("veteran") who was previously homeless for many years is

so afraid being back onto the streets.

246.    On December 22, 2011 the disabled ("veteran") shares with Plaintiff ("Gavin") that they

would sleep during the day and walk the streets at night so that they did not die from

hypothermia.

247. On December 22, 2011 after listening to the disabled ("veteran") Plaintiff ("Gavin") invites the neighbor they are welcome to come over anytime and talk.

248. On December 22, 2011 Plaintiff ("Gavin") invites the neighbor over for Christmas breakfast.

249. On December 25, 2011 the disabled "veteran" comes over to Plaintiff ("Gavin's") family home and has Christmas breakfast with Plaintiff's family.

250. On December 25, 2011 Plaintiff ("Gavin") gives the disabled veteran a gift for Christmas.

251. On December 25, 2011 out of concern for the disabled "veteran's" mental health Plaintiff ("Gavin") writes the U.S. Department of Veterans Affairs on the issue of the usurious Three (3) Day Notices impacts on disabled veterans.

252. On January 03, 2012 Sunshine Ordinance Task Force members hear Plaintiff ("Gavin's") family complaint #11068 Anonymous v. San Francisco Planning Department. See Ex#

253. In January 2012 Plaintiff ("Gavin") calls the city attorney's office and leaves messages for Defendant DCA ("Yvonne Meré, Esq.,").

254. On January 03, 2012 after a 3 hour hearing renders a unanimous decision Sunshine Task Force members determine the executive director and employees of San Francisco Planning Department are in violation of the Sunshine Ordinance for withholding the 14 phantom pages of revisions and other documents.

255. In January 2012 Plaintiff ("Gavin") follows up with a letter about the meeting held on December 01 2011.

256. There is no response from Defendant DCA ("Yvonne Meré, Esq.,") .

257.    In January 2012 Plaintiff ("Gavin") faxes the supervisor DCA Alex Tse about Defendant

DCA ("Yvonne Meré") non-response to Plaintiff ("Gavin") and Plaintiff ("Gavin's") neighbor.

258.    In January 2012 Plaintiff ("Gavin") follows up with a telephone call to DCA Alex Tse,

Esq., in regards to DCA ("Yvonne Meré, Esq.,").

259.    In January 2012 DCA Alex Tse said the he would have Defendant DCA ("Yvonne Meré,

Esq.,") telephone Plaintiff ("Gavin").

260.    It is two years later when Defendant DCA ("Yvonne Meré, Esq.,") responds to Plaintiff

("Gavin") in regards to the about the meeting with redacted e-mail.

261.    On January 24, 2012 Defendant DCA ("Charles R. Sullivan, Esq.,") author of the

Parkmerced Development Agreement does not appear at the Sunshine hearing for cases #11066

and # 11080 Plaintiff ("Gavin") has filed against him to answer questions about his violations of

the Brown Act and Sunshine Ordinance.

262.    On January 24, 2012 Defendant DCA ("Charles R. Sullivan, Esq.,") is found in violation

of the Sunshine Ordinance under Section 67.21 (e): for failure to appear at Sunshine hearings.

263.    On January 24, 2012 Defendant DCA ("Cheryl S. Adams, Esq.,") who co-chaired the

meeting in the approval of the Parkmerced Development does not appear the Sunshine hearing in

Sunshine case # 11079 Plaintiff ("Gavin") files against her to answer questions about her

violations of the Brown Act and Sunshine Ordinance.

264.    On January 26, 2012 Plaintiff ("Gavin") raises the issue of the voluminous Three (3)

Notices for usurious utility fees (water, sewer and garbage) at a San Francisco Housing Authority

meeting.

265. On January 26, 2012 President of the San Francisco Housing Commission Amos Brown tells Plaintiff ("Gavin") to "shut up and sit down."

266. On January 26, 2012 Plaintiff ("Gavin") continues to speak at the San Francisco Housing Authority meeting and tells Amos Brown his actions are non-complaint with the Ralph M. Brown Act and San Francisco Sunshine Ordinance that pertains to open meetings.

267. On January 26, 2012 the San Francisco Housing Commission counsel state that he did not know what the Brown Act or Sunshine Ordinance is about but would find out.

268. On January 26, 2012 Plaintiff ("Gavin") meets Paul Currier at the San Housing Authority meeting.

269. Paul T. Currier is impressed by Plaintiff ("Gavin's") knowledge of public meeting laws that he asks Plaintiff ("Gavin") to teach him about the laws.

270. Plaintiff ("Gavin") agrees to teach Paul Currier about the public meeting laws and over the next few months they become friends.

271. Paul T. Currier comes over to Plaintiff ("Gavin's") home every Sunday to learn about public meeting laws that pertain to elected officials.

272. Paul T. Currier is very active in the local politics of the Democratic Central Committee.

273. Paul T. Currier soon learns how to file a Sunshine complaint.

274. Paul T. Currier is a prolific writer and blogs often about politics.

275. On January 27, 2012 the U.S. Department of Veterans Affairs responds to Plaintiff ("Gavin's") letter.

276.    In February 2012 Plaintiff ("Gavin") has an appointment with the investigator from San
Francisco Human Rights Commission assigned to Plaintiff's case.

277.    In February 2012 Plaintiff ("Gavin's") is assigned to a new investigator and Plaintiff
("Gavin") explains why the case is filed against Defendants ("Parkmerced Investors Properties,
LLC.,").

278.    The San Francisco Human Rights Commission investigator does not investigate Plaintiff
("Gavin's") case.

279.    On February 07, 2012 Plaintiff ("Gavin") attends a San Francisco Rent Board
Commission meeting.

280.    On February 07, 2012 at the San Francisco Rent Board Commission meeting
Commissioner Murphy makes crude statements referring to residents at Parkmerced as "crying
tar babies."

281.    On February 07, 2012 at the San Francisco Rent Board Commission meeting
Commissioner Murphy uses derogatory speech towards one of the Commissioner's who is
critical of the Three (3) Day Notices issued by Defendants ("Parkmerced Investors Properties,
LLC.,").

F.    **Notification of Official Misconduct**

282.    On March 13, 2012 Sunshine Ordinance Chairperson Hope Johnson writes a letter to San
Francisco District Attorney George Gascón citing four current the members of the San Francisco
Board of Supervisors have committed a misdemeanor under the San Francisco Sunshine
Ordinance and the Brown Act in complaint #11048.

283.    On March 13, 2012 Sunshine Ordinance Chairperson Hope Johnson writes a letter to San

Francisco Ethics Commission citing four current members of San Francisco Board of

Supervisors have committed a misdemeanor under San Francisco Sunshine Ordinance and the

Brown Act in complaint #11048.

284.    All elected officials and department heads in the City and County of San Francisco must

take Sunshine Ordinance training once every two years.

285.    Upon completion of training officials are required to sign an affidavit to uphold the

Sunshine Ordinance.

286.    The Sunshine Ordinance Section 67.36 states "Sunshine Ordinance Supersedes" all local

ordinances in the City and County of San Francisco.

287.    Upon completion of Sunshine training officials are required to sign an affidavit to uphold

Sunshine.

288.    All elected officials and department heads in the City and County of San Francisco must

take Ethics training once every two years.

289.    Upon completion of Ethics training officials are required to sign an affidavit to uphold

Ethics.

290.    A violation of the Sunshine Ordinance is a violation to other affidavits such as the oath of

office, and ethics training.

**G.    Retaliation**

291.    On March 14, 2012 the Clerk of the Board posts vacancy positions online for all of

Sunshine Ordinance Task Force members.

292.    On April 17, 2012 Sunshine Ordinance Task Force members posts the determination for
case #11068 on Sunshine's website: "The Task Force finds the Planning Department in violation
of Sunshine Ordinance Sections 67.21(a) for failure to provide Anonymous with copies of all
Parkmerced project documents as requested on June 2, 2011 and June 23, 2011 without
unreasonable delay; 67.21(b) for failure to provide Anonymous with copies of all Parkmerced
project documents as soon as possible and within 10 days of the June 2, 2011 and June 23, 2011
requests; and 67.25(d) for failure to provide Anonymous with copies of all Parkmerced project
documents on a rolling basis."

293.    On May 18, 2012 Sunshine Task Force Chairperson Hope Johnson sends a letter to
Defendant City Attorney ("Dennis Herrera") stating city deputy attorneys should appear at
Sunshine hearings when complaints are filed against them.

**H.    Continuum of Official Misconduct**

294.    As of 2024 Defendant City and County of San Francisco will assist Defendant's
("Parkmerced Investors Properties, LLC., with financing.

295.    On May 22, 2012 Defendant SF BOS ("Mark Farrell") states "the Sunshine Task Force
needs new blood."

296.    On May 22, 2012 Defendants ("San Francisco Board of Supervisors") in a contentious
meeting vote 6/5 to shut down the Sunshine Ordinance Task Force.

297.    On May 22, 2012 Defendants ("San Francisco Board of Supervisors") violate the
Sunshine Ordinance section 67.30 because there are not enough people to replace the Task Force
members.

298.   On May 22, 2012 is another historic decision that involves the Sunshine Ordinance in
that it has never been shut down since it began.

299.   On May 22, 2012 the shut down of cancels Plaintiff ("Gavin's") next Sunshine case
scheduled the following week that references non-disclosure of the $50,000 donation from
Defendant ("Stellar Management").

**I.    Unlawful Eviction**

300.   On July 02, 2012 Plaintiff ("Gavin") unlawful detainer is scheduled in San Francisco
Superior Court.

301.   On July 02, 2012 Plaintiff ("Gavin") and the non-profit attorney do not come to any
agreement on how Plaintiff ("Gavin's") case will proceed.

302.   On July 02, 2012 Plaintiff ("Gavin") non-profit attorney would not release any discovery
that was obtained in Plaintiff ("Gavin's") case.

303.   On July 02, 2012 Plaintiff ("Gavin") and the non-profit attorney part ways.

304.   On July 02, 2012 Plaintiff ("Gavin") is in arbitration for 2 hours with Defendant
("Parkmerced's") landlord attorney Defendant ("David Wasserman, Esq.,")in San Francisco
Superior Court.

305.   On July 02, 2012 Defendant ("David Wasserman") the tenant attorney for ("Parkmerced
Investors Properties, LLC.,") declines to accept installment payments on the usurious utility fees
and steps out of the arbitration meeting.

306.   On July 02, 2012 the arbitrator states to Plaintiff ("Gavin") the unlawful detainer case
will be heard on July 05, 2012.

307.   On July 02, 2012 Plaintiff ("Gavin") is experiencing heart palpitations and leaves the court.

308.   Defendant ("David Wasserman, Esq.,") the tenant attorney for Defendants ("Parkmerced Investors Properties, LLC.,") does not disclose that Plaintiff ("Gavin's") family has a federal subsidized Housing Choice Voucher.

309.   On July 02, 2012 the Superior Court judge enters a default judgment against Plaintiff ("Gavin's") family in a case the superior court does not have jurisdiction over.

310.   Plaintiff ("Gavin") makes numerous attempts to redress the violation of the HAP in San Francisco Superior Court however, there are many issues Plaintiff ("Gavin") is unable to over come due to Plaintiff's mobility disability and complications with public transportation.

311.   In addition Plaintiff ("Gavin") faces other issue in accessing the court do to walkouts by clerks in protest over state budget cuts.

312.   On July 25, 2012 Plaintiff ("Gavin") is found unconscious in the living room floor by Plaintiff's son.

313.   On July 25, 2012 paramedics take Plaintiff ("Gavin") to the hospital due to heart palpitations.

314.   On July 25, 2012 Plaintiff ("Gavin's") family is wrongfully evicted from Plaintiffs home.

315.   On July 25, 2012 Defendant ("David Wasserman, Esq.,") takes possession of Plaintiffs home and immediately disposes of all Plaintiffs property.

316.   Plaintiff ("Gavin") is evicted in the pajamas worn to the hospital and Plaintiffs family lose all of Plaintiffs property.

317.    On August 01, 2012 Plaintiff ("Gavin") submits paperwork to run for Board Supervisor in the district where Plaintiff's family resided.

318.    Paul T. Currier offers to assist Plaintiff ("Gavin") with the campaign for Board Supervisor.

319.    On August 04, 2012 Plaintiff ("Gavin's") family files in the U.S. District Court for violations of ADA and other violations under 42 U.S.C. § 1983 and the Americans with Disabilities Act.

320.    Paul T. Currier also assist Plaintiff ("Gavin") on how to look at the issues in a federal case.

321.    Paul T. Currier thinks that there is a R.I.C.O. pattern in his case and my case however, there is no one to plead the cases.

322.    On September 20, 2012 Paul T. Currier asks Plaintiff ("Gavin") to meet him at the Federal Bureau of Investigation (FBI) at 450 Golden Gate Avenue in San Francisco.

323.    On September 20, 2012 Paul T. Currier and Plaintiff ("Gavin") meet with the FBI agent of the day.

324.    Mr. Currier speaks with the agent about corruption issues among elected officials in the city government.

325.    Mr. Currier is a resident of subsidized housing for seniors and disabled people.

326.    Mr. Currier is certain there is embezzlement with federal funds allocated to the residents from HUD and has a large role in having another tenant election at the apartment complex.

327.    Mr. Currier has told Plaintiff ("Gavin") a convicted felon that has an elected position on the tenants advisory has made threats against his life.

328.    On September 19, 2012 the judge in the criminal division in San Francisco Superior Court denies Mr. Currier a restraining order against the resident who threaten his life.

329.    Mr. Currier also gave the agent a cache of documents to read about elected officials.

330.    As the election for San Francisco Board of Supervisors draws near Mr. Currier assists Plaintiff ("Gavin") with the campaign.

331.    A week before the election Plaintiff ("Gavin") does not hear from Mr. Currier which is unusual.

332.    On November 05, 2012 Mr. Currier is found dead in his apartment.

333.    Mr. Currier's sudden demise is a shock to people who knew him.

334.    On January 16, 2013 and January 24 Plaintiff ("Gavin") files a report against San Francisco Human Rights Commission for not investigating Plaintiff's Americans with Disabilities complaint against Defendants ("Parkmerced Investors Properties, LLC."

335.    On February 07, 2013 Mayor Edward Mah Lee appoints new commissioners to San Francisco Housing Commission.

336.    Defendant's ("Parkmerced Investors Properties, LLC.,") attorney is appointed to the San Francisco Rent Board.

337.    Plaintiff ("Gavin") files multiple in the attempt to get an ex-parte hearing for relief.

338.    Defendants ("Parkmerced's Investors Properties, LLC.,") seizes all of Plaintiff ("Gavin's") durable medical equipment causing Plaintiff ("Gavin") to make numerous trips to the hospital.

339.    Plaintiff ("Gavin's") loss of durable medical respiratory equipment cause Plaintiff ("Gavin") to have multiple near fatal episodes.

**J.    Justice Delayed Justice Denied**

340.    The district judge does not respond to any of Plaintiff ("Gavin's") family court filing in January 2013.

341.    On April 16, 2013 four months later the district judge dismisses Plaintiff ("Gavin's") family case with prejudice and instructs the clerks not to process any claim from Plaintiff ("Gavin") or Plaintiff ("Gavin's") son Bamidele Hambolu.

342.    District judge does not ever grant Plaintiff ("Gavin") family any hearing and stalls the case for 4 months.

343.    On April 16, 2013 U.S. district judge trampled on Plaintiff ("Gavin's") family rights enumerated in the Constitution under the Seventh Amendment, "Right to a Jury Trial".

344.    In April 16, 2013 U.S. district judge, trampled on Plaintiff ("Gavin's") family rights enumerated in the Constitution under the Ninth and Tenth Amendments, "Right to a Jury Trial" is an inviolate right in the California State Constitution.

345.    Plaintiff is unaware at the time if the district judge is an investor in one of the corporations that is an investor in Defendant ("Parkmerced Investors Properties, LLC.,").

**K.    Money Laundering**

346.    After passage of the Parkmerced Development Agreement Defendant ("Fortress Investment Group") sells their share of the 152 acres to a different company that is owned by Defendant ("Robert A. Rosania") for one billion dollars.

347.   On June 11, 2013 two months after a district judge closes Plaintiff ("Gavin's") family case without ever providing Plaintiff ("Gavin'") family an appearance in the Court furtherance of alleged violations of RICO continue in this case with all Defendants.

348.   On June 11, 2011 Defendant ("Greystar") employee Defendant ("Margot Loiselle") in Phoenix, AZ writes a check on behalf of Defendants ("Parkmerced Investors Properties, LLC.,") and mails the check to Defendant ("SFMTA") in San Francisco, CA.

349.   Defendant ("SFMTA") deposits the check into their account.

350.   After  passage of Defendants "Parkmerced Investors Properties, LLC.,) redevelopment agreement, Defendant ("Fortress Investment Group, LLC.,") sells its ownership to a different company Defendant ("Maximus") that is owned by Defendant ("Robert A. Rosania").

**L.    Aiding and Abetting**

351.   Defendants ("Parkmerced Investors properties, LLC.,") continue to issue the Three (3) Day Notices for usurious utility fees.

352.   The San Francisco Rent Board does not require all Three (3) Day Notices to be filed with the their office.

353.   Defendants ("SFBOS") passage of Defendants ("Parkmerced Investors Properties, LLC.,") creates a living document.

354.   There are constant changes made to the Parkmerced Development Agreement.

355.   Originally Defendants ("Parkmerced Investors Properties, LLC.,") state Defendants will pay for everything.

356.   Defendants ("City and County of San Francisco") is in talks with Defendant ("Parkmerced Investors Properties, LLC.,) to provide assistance with financing.

357.    There could be more that the 1,200 plus Three (3) Day Notices issued by Defendants

("Parkmerced Investors Properties since they have stopped posting the notices with the Rent

Board.

358.    The actual number of Three (3) Notices for usurious utility fees and what happened to

Parkmerced residents who received them will not be known until discovery.

359.    In the year 2023 more than 800 unhoused people died on the streets of San Francisco.

360.    Issuance of Defendant's ("Parkmerced Investors Properties LLC") Three (3) Day Notices

for usurious utilities fees impact on working-class and low-income residents displacement is

unknown until there is discovery.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Title II of the 1990 Americans with Disabilities Act Part 35, 28 C.F.R. § 35.130 et seq.

All Plaintiffs Against Defendants San Francisco Public Utilities Commission, City and County of

San Francisco, Mayor Gavin Newsom, Mayor London Breed, San Francisco Board of

Supervisors, John Avalos, Malia Cohen, Carmen Chu, Malia Cohen, Carmen Chu, David

Campos Esq, David Chiu Esq, Mark Farrell Esq, Jane Kim Esq, Eric Mar, Ross Markarimi, Sean

Elsbernd Esq, Scott Wiener Esq, City Attorney Dennis Herrera  Esq., District Attorney George

Gascón Esq, Does 1-50

361.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

Plaintiff Gavin has a physical disability[1] that substantially limits one or more major life activities

---

[1]    42 U.S.C.§ 12102 Disability:  The term "disability" means, with respect to an individual—
    (A) a physical or mental impairment that substantially limits one or more major life activities of such
individual;

362.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is

permanently disabled with multiple disabilities including but not limited to a mobility disability

that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a

wheelchair, walker, crutches, a cane, and a rollator.

363.    It "shocks the conscience Plaintiffs who have made several attempts to address civil

liberties enumerated in the U.S. Constitution and California Constitution continue to be denied.

364.    There are no meters to measure water usage for the townhome apartments at Parkmerced.

365.    Defendant ("San Francisco Public Utilities Commission") (hereinafter SFPUC) is owned

and operated by the City and County of San Francisco.

366.    Defendant ("SFPUC") is a recipient of millions of dollars from the federal government

for maintenance on multiple projects.

367.    Defendant ("SFPUC") has programs that provide assistance to customers who are low-

income or disabled.

368.    Defendant ("SFPUC") has a discount program called Medical Necessity Assistance

Program ("hereinafter MNAP).

369.    Defendant ("SFPUC") MNAP provides a discount for disabled people with specific

durable medical equipment.

---

(B) a record of such an impairment; or
(C) being regarded as having such an impairment (as described in paragraph (3)).
(2) **Major life activities**
(A) **In general**
For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself,
performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,
learning, reading, concentrating, thinking, communicating, and working.
(B) **Major bodily functions**
For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function,
including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder,
neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

370.    Plaintiff ("Gavin") qualifies for the MNAP due to Plaintiff's durable respiratory medical equipment.

371.    Defendant ("SFPUC") denies Plaintiff ("Gavin") access to the MNAP because Plaintiff ("Gavin") does not have a meter to measure water usage.

372.    Plaintiff ("Gavin") alleges Defendant ("SFPUC") actions violates Plaintiff ("Gavin's") right under Title II of the ADA 28 C.F.R. § 35.130 (b) (1) (vii): Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service.

373.    28 C.F.R. § 35.130 (7): A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate the making the modifications would fundamentally alter the nature of the service, program, or activity.

374.    Defendant ("SFPUC") provides Plaintiff ("Gavin") with booklets to read about how water meters calculate usage.

375.    Defendants collective actions are injurious to Plaintiff ("Gavin's) family and therapeutic animal to be proven at trial.

SECOND CAUSE OF ACTION

Title II of the Americans with Disabilities Act 28 C.F.R. § 35.130 et seq.

All Plaintiffs Against Defendants San Francisco Public Utilities Commission,  Ed Harrington, Harlan Kelly, City and County of San Francisco, Mayor Gavin Newsom, Mayor London Breed, San Francisco Board of Supervisors, John Avalos, Malia Cohen, Carmen Chu, Malia Cohen, David Chiu Esq., David Campos Esq., Mark Farrell Esq., Jane Kim Esq., Eric Mar, Ross

Mirkarimi, Sean Elsbernd Esq., Scott Wiener Esq., City Attorney Dennis Herrera Esq., District

Attorney George Gascón Esq, individual, heirs, successors, assigns, principals, trustees, sureties,

subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of

Defendants 1-50

376.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

377.    Plaintiff Gavin has a physical disability that substantially limits one or more major life

activities.

378.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is

permanently disabled with multiple disabilities including but not limited to a mobility disability

that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a

wheelchair, walker, crutches, a cane, and a rollator.

379.    There are no meters to measure water usage for the townhome apartments at Parkmerced.

380.    Defendant ("Fortress Investment Group LLC") and other Parkmerced investors third-

party billing statements for Plaintiff ("Gavin") are just as high as utilities for a single family

home.

381.    Defendant's ("San Francisco Public Utilities Commission,") (hereinafter SFPUC)

discriminates against Plaintiff ("Gavin's") family in their denial to allow Plaintiff ("Gavin") to

access Defendant's ("SFPUC") "Customer Assistance Program" (hereinafter CAP) for low-

income residents.

382.    Plaintiff ("Gavin's") income qualifies Plaintiff to participate in the "CAP."

383.   Defendants ("SFPUC") deny Plaintiff ("Gavin") the opportunity to participate in the "CAP" program because Plaintiff ("Gavin") does not have a meter that measures water usage to Plaintiffs home.

384.   Plaintiffs allege Defendant's ("SFPUC") actions violates Plaintiff ("Gavin") of rights under Title II of the 1990 ADA 28 C.F.R. § 35.130 (b) (1) (vii): Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service.

385.   Plaintiffs allege Defendants ("SFPUC.,") violates Plaintiff ("Gavin") rights under 28 C.F.R. § 35.130 (7): A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate the making the modifications would fundamentally alter the nature of the service, program, or activity.

386.   Defendant ("SFPUC") provides Plaintiff ("Gavin") with more books to read about how water meters calculate usage.

387.   Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

///

///

///

///

///

///

///

THIRD CAUSE OF ACTION

Title III of the Americans with Disabilities Act 28 C.F.R. § 36.207(b)

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors
Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC,
Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi
MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of
Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence
Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University, individual,
heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents,
employees, corporate, partnership, associates, and insures of Defendants 1-50

388.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

389.    Plaintiff Gavin has a physical disability that substantially limits one or more major life
activities.

390.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is
permanently disabled with multiple disabilities including but not limited to a mobility disability
that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a
wheelchair, walker, crutches, a cane, and a rollator.

391.    Plaintiff ("Gavin") asks Defendant ("Bernard Polacci") for a reasonable accommodation
to have grab bars in Plaintiff ("Gavin's") bathroom.

392.    Defendant ("Bernard Polacci") does not provide Plaintiff ("Gavin") with a grab bars in
the bathroom.

393.    Defendant ("Bernard Polacci") does not respond to Plaintiff's request or participant in the
interactive process.

394.    Plaintiff ("Gavin") speaks to Defendant ("Bernard Polacci") about having a closer

parking space to Plaintiff's home.

395.    Plaintiff ("Gavin") contacts San Francisco Municipal Transportation Agency (hereinafter

SFMTA) to find out where a disabled parking space could be reserved near Plaintiff's home.

396.    On August 18, 2011 Plaintiff ("Gavin") receives a letter from an SFMTA employee about

disabled parking near Plaintiff's home.

397.    On August 18, 2011 the SFMTA employee includes a map of areas where a disabled

parking space could be reserved near Plaintiff's home.

398.    On August 18, 2011 the SFMTA employee included pictures of the areas where a

disabled parking space could be reserved near Plaintiff's home.

399.    Plaintiff ("Gavin") alleges Defendant ("Bernard Polacci") violates Plaintiff's rights under

the ADA Section Title III § 36.207(b)[2].

400.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and

therapeutic animal will be proven at trial.

///

///

///

///

---

[2] ADA Title III § 36.207(b)    Places of public accommodation located in private residences: The portion of the

residence covered under paragraph (a) of this section extends to those elements used to enter the place of public

accommodation, including the homeowner's front sidewalk, if any, the door or entryway, and hallways; and those

portions of the residence, interior or exterior, available to or used by customers or clients, including restrooms.

## FOURTH CAUSE OF ACTION

Title II of the Americans with Disabilities Act § 28 C.F.R. § 35.134

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University, individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

401.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

402.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

403.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

404.    On August 24, 2011 Plaintiffs allege Defendants (Parkmerced Investors Properties LLC) issuance of the Three (3) Day Notice is retaliation against Plaintiffs Sunshine complaint #11048 that renders passage of Defendant's redevelopment agreement "null" and "void". See Ex 5 & 8

405.    Plaintiff ("Gavin") asks Defendant ("Robert Rosania") for a reasonable accommodation to make installment payments on the usurious utilities fees in arrears.

406.    Defendant's ("Parkmerced Investors Properties LLC") employees urge Defendant ("Robert Rosania") to not grant Plaintiff ("Gavin's") reasonable accommodation request.

407.    Defendant ("Robert Rosaia") does not respond to Plaintiffs faxed letter and does not engage in the interactive process.

408.    Plaintiff ("Gavin") alleges Defendant's ("Parkmerced Investors Properties LLC") violates Plaintiff's rights under 28 C.F.R. § 35.134:

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

409.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

///

///

///

///

///

FIFTH CAUSE OF ACTION

Title III of the Americans with Disabilities Act 28 C.F.R. § 36.206(a)( c)(3)(4) Retaliation

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University,  individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

410.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

411.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

412.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

413.    On August 23, 2011 Defendant ("Parkmerced Investors Properties LLC.,) employee Defendant ("Bernard Polacci") is present at the Sunshine hearing.

414.    On August 23, 2011 Plaintiff ("Gavin's") family wins a Sunshine hearing on the issue of Defendant ("Parkmerced Investors Properties LLC") redevelopment agreement.

415.    On August 23, 2011 the SOTF decision renders the actions taken by member on the Land Use Economic Development Committee meeting violate San Francisco Sunshine Ordinance.

Therefore actions taken by the full Board of Supervisors in the approval of Parkmerced's

Redevelopment Agreement renders the Supervisors actions "null and void".

416.    On August 24, 2011 Defendant ("Parkmerced Investors Properties LLC., ) place a Three

(3) Day Notice on Plaintiff's front door for the amount of $1,586.72 in arrears. See Ex 6

417.    The notice immediately gives Plaintiff ("Gavin") heart palpitations and the Plaintiff calls

their primary care doctor's office for an appointment.

418.    Defendant's ("Parkmerced Investors Properties LLC") do not provide enough specificity

to explain how the amount for the usurious utility fees (water, sewer and garbage) are calculated.

419.    Plaintiff ("Gavin") goes to the office but no employee would speak to the Plaintiff

because of the issuance of the Three (3) Day Notice.

420.    Plaintiff ("Gavin") alleges Defendant ("Parkmerced Investors Properties LLC.,")

issuance of the Three (3) Day Notice is retaliation because of Plaintiff ("Gavin's") family wins

Sunshine case #11048.

421.    Plaintiff ("Gavin") alleges Defendant ("Parkmerced Investors Properties LLC") violates

Plaintiff ("Gavin's") rights under the Title III of the 1990 Americans with Disabilities Act

28 C.F.R. § 36.206 (a), (b)and (c),(3)(4):

Retaliation: Title III of the 1990 Americans with Disabilities Act 28 C.F.R. § 36.206(a)(b) and (c)

(3)(4) Retaliation or Coercion:

> (a) "No private or public entity shall discriminate against any individual because that
>
> individual has opposed any act or practice made unlawful by  part, or because that
>
> individual made a charge, testified, assisted, or participated in any manner in an
>
> investigation, proceeding, or hearing under the Act or this part."

b. "No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his other having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part."

"Illustrations of conduct prohibited by this section include, but are not limited to:

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

422.   Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

## SIXTH CAUSE OF ACTION

Americans with Disabilities Act, Tittle III § 36.206 (a), (b), (c),(3)(4): Retaliation

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert  Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University,  individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

423.   Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

424.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

425.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

426.    On August 23, 2011 Defendant ("Parkmerced Investors Properties LLC.,) employee Defendant ("Bernard Polacci") is present at the Sunshine hearing.

427.    On August 23, 2011 Plaintiff ("Gavin's") family wins a Sunshine hearing on the issue of Defendant ("Parkmerced Investors Properties LLC") redevelopment agreement.

428.    On August 23, 2011 the SOTF decision renders the actions taken by member on the Land Use Economic Development Committee meeting violate San Francisco Sunshine Ordinance. Therefore actions taken by the full Board of Supervisors in the approval of Parkmerced's Redevelopment Agreement renders the Supervisors actions "null and void".

429.    On September 19, 2011 Defendant ("Parkmerced Investors Properties LLC., ) place a second Three (3) Day Notice on Plaintiff's front door for the amount of $1,110.92 in arrears.

430.    The second Three (3) Day Notice is a week before the continuance of Plaintiff ("Gavin's") family second hearing for Sunshine complaint #11048 in part 2 of 2.

431.    Defendant's ("Parkmerced Investors Properties LLC") Three (3) Day Notice does not provide enough specificity to explain how the amount for the usurious utility fees (water, sewer and garbage) is calculated. See Ex 8

432.    Plaintiff ("Gavin") goes to the office but no employee would speak to the Plaintiff

because of the issuance of the Three (3) Day Notice.

433.    On September 27, 2011 the San Francisco Sunshine Ordinance Task Forces finds the

remaining Board of Supervisors on the Land Use Economic Development Committee in

violation of Sunshine.

434.    On September 27, 2011 the San Francisco Sunshine Ordinance Task Force finds

Defendant President of the Board of Supervisors ("David Chiu, Esq.,") in violation of Sunshine.

435.    Defendant ("David Chiu, Esq.,") introduces the 14 "phantom pages of revisions to the

Land Use Economic Development Committee (hereinafter LUEDC).

436.    Plaintiff ("Gavin") alleges Defendant ("Parkmerced Investors Properties LLC.,")

issuance of the Three (3) Day Notice is retaliation because of Plaintiff ("Gavin's") family wins

Sunshine case #11048.

437.    On September 19, 2011 Plaintiff ("Gavin") alleges Defendant ("Parkmerced Investors

Properties LLC") violates Plaintiff ("Gavin's") rights under the Americans with Disabilities Act,

Tittle III § 36.206 (a), (b) and (c),(3)(4):

Retaliation:

        (a) "No private or public entity shall discriminate against any individual because that

        individual has opposed any act or practice made unlawful by  part, or because that

        individual made a charge, testified, assisted, or participated in any manner in an

        investigation, proceeding, or hearing under the Act or this part.

        b. No private or public entity shall coerce, intimidate, threaten, or interfere with any

        individual in the exercise or enjoyment of, or on account of his or her having exercised or

enjoyed, or on account of his other having aided or encouraged any other individual in the

exercise or enjoyment of, any right granted or protected by the Act or this part."

"Illustrations of conduct prohibited by this section include, but are not limited to:

(3)  Intimidating or threatening any person because that person is assisting or encouraging

an individual or group entitled to claim the rights granted or protected by the Act or this

part to exercise those rights; or

(4)  Retaliating against any person because that person has participated in any

investigation or action to enforce the Act or this part.

## SEVENTH CAUSE OF ACTION

Retaliation: ADA Title III § 36.206(a)(c)(3)(4) Retaliation:

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors

Properties, LLC., Robert  Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC,

Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi

MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of

Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence

Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University,  individual,

heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents,

employees, corporate, partnership, associates, and insures of Defendants 1-50


438.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

439.    Plaintiff Gavin has a physical disability that substantially limits one or more major life

activities.

440.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is

permanently disabled with multiple disabilities including but not limited to a mobility disability

that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a

wheelchair, walker, crutches, a cane, and a rollator.

441.    On August 24, 2011 Defendant ("Parkmerced Investors Properties LLC.,) place the first

Three (3) Day Notice on Plaintiff ("Gavin's") front door for usurious utility fees (water, sewer

and garbage) in the amount of $1,586.72.  See Ex 5

442.    Defendant's ("Parkmerced Investors Properties LLC") Three (3) Day Notice does not

provide enough specificity to explain how the amount for the usurious utility fees (water, sewer

and garbage) is calculated.

443.    Plaintiff ("Gavin") goes to the office but no employee would speak to the Plaintiff

because of the issuance of the Three (3) Day Notice.

444.    On August 25, 2011 Plaintiff ("Gavin") faxes Defendant ("Robert A. Rosania") and

request a "reasonable accommodation" to make installment payments on the usurious utility fees

and to pay the monthly amount going forward.

445.    Obtained in a limited discovery Defendant's ("Parkmerced Investors Properties LLC")

employees urge Defendant ("Robert Rosania") not to grant Plaintiff ("Gavin's") "reasonable

accommodation" request.

446.    Defendant ("Robert Rosania") does not respond to Plaintiff ("Gavin's") letter.

447.    Defendant ("Robert Rosania") does not engage in the interactive process.

448.    Plaintiff Gavin alleges Defendants' collective actions in concert violate Plaintiff's rights

under the Americans with Disabilities Act, Tittle III § 36.206 (a), (b)and (c),(3)(4):

Retaliation: Title III of the 1990 ADA 28 C.F.R. § 36.206(a)(b) ( c)(3)(4) Retaliation or

Coercion:

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

b. No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his other having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part."

"Illustrations of conduct prohibited by this section include, but are not limited to:

(3)  Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4)  Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

449.    On September 30, 2011 Defendants ("Parkmerced Investors Properties LLC") landlord attorneys file an unlawful detainer in San Francisco Court against Plaintiff ("Gavin's") family.

450.    On September 30, 2011 Plaintiffs allege Defendants ("Parkmerced Investors Properties LLC") again under Title III of the 1990 ADA 28 C.F.R.§ 36.206(a)( c)(3)(4) Retaliation.

451.    Defendants' actions culminate in the wrongful eviction of Plaintiff ("Gavin") family from their home are injurious in that homlessness kills.

452.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

## EIGHTH CAUSE OF ACTION

### Animal Cruelty

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University, individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

453.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

454.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

455.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

456.    Plaintiff ("Gavin") has a rabbit that is a therapeutic animal named Danni.

457.    Plaintiff ("Gavin's") therapeutic animal is well trained.

458.    Plaintiff ("Gavin's") therapeutic animal is not ever caged and has full access to the apartment.

459.    Plaintiff ("Gavin's") rabbit would sit by the backdoor when she wanted to go outside.

460.    Plaintiff ("Gavin's") therapeutic animal enjoys the large courtyard at the townhome apartment.

461.    Plaintiff ("Gavin's") therapeutic animal would run out of the apartment and scurry back when she was called.

462.    Plaintiff ("Gavin's") therapeutic would also play by scurrying up and down the stairs as fast as she could run.

463.    Plaintiff ("Gavin's") therapeutic animal lost all of her freedom when Plaintiff ("Gavin") family is wrongfully evicted from their home.

464.    Defendants ("Parkmerced Investors Properties LLC") employees is aware that Plaintiff ("Gavin") has a rabbit.

465.    Plaintiff ("Gavin") alleges Defendants ("Parkmerced Investors Properties LLC") wrongful eviction of Plaintiff ("Gavin's") family and rabbit is animal cruelty.

## NINTH CAUSE OF ACTION
### Federal Conspiracy 18 U.S.C. § 1962 (d)

All Plaintiffs Against Defendants San Francisco County Transportation Authority Commissioners also known as San Francisco Board of Supervisors, John Avalos, Malia Cohen, Carmen Chu, David Campos Esq, David Chiu Esq, Mark Farrell Esq, Jane Kim Esq, Eric Mar, Ross Markarimi, Sean Elsbernd Esq, Scott Wiener Esq, San Francisco Municipal Transportation Agency employees Peter Albert, Jessica Manzi, Matt Lasky, Stellar Management employee Seth Mallen, and Does 1-50

466.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

467.    Plaintiff Gavin has a physical disability that substantially limits one or more major life
activities.

468.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is
permanently disabled with multiple disabilities including but not limited to a mobility disability
that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a
wheelchair, walker, crutches, a cane, and a rollator.

469.    Plaintiff ("Gavin") alleges Defendants collective actions concealment of information
pertaining to the information contained within the 14 "phantom pages" of revisions into the
Parkmerced Development Agreement on the day Board of Supervisors vote on the project,
violate Plaintiffs rights under Cal. Civ. Code § 338 (h).[3] See United States v. Wilbur, 674 F .3d
1160, 1176 (9th Cir. 2012) ("The general rule is that a"conspiracy continues until there is
affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the
conspiracy." United States v. Recio, 371 F .3d 1093, 1096 (9th Cir.2004) (internal quotation
marks omitted). There are relatively few cases in which defendants have argued that gaps in their
activity demonstrated abandonment or withdrawal from the conspiracy such that the government
was required to charge two separate conspiracies. See, e.g., United States v. Krasn, 614 F.2d
1229 (9th Cir.1980); United States v. Payne, 635 F.2d 643 (7th Cir. 3740 1980); Continental
Baking Co. v. United States, 281 F.2d 137 (6th Cir.1960).")

470.    In Spring 2011 San Francisco County Transportation Authority hereinafter ("SFCTA")
agree at a meeting to accept a $50,000 contribution from Defendants ("Parkmerced Investors
Properties, LLC.,") for a project in Defendant Carmen Chu's district that is fully funded.

---

[3]    Cal. Civ. Code § 338 (h) Fraud: An action commenced under Section 17536 of the Business and Professions
Code. The cause of action in that case shall not be deemed to have accrued until the discovery by the aggrieved
party, ...

471.    Defendants San Francisco Board of Supervisors (" hereinafter SF BOS") capacity as Supervisors are the legislative branch of city government.

472.    Defendants San Francisco County Transportation Authority (" hereinafter SFCTA") Commissioners  capacity as transportation commissioners is to  over see all aspects of transportation in the City and County of San Francisco.

473.    Defendants ("SFCTA") Commission delegate daily operations of public transportation to the  San Francisco Municipal Transportation Agency hereinafter (" hereinafter SFMTA").

474.    In March 28, 2011 after the Defendants ("SFMTA") employees Peter Albert, Jessica Manzi and Matt Lasky write a memorandum to Defendant ("Seth Mallen") an employee of Defendant ("Stellar Management") about the $50,000 contribution Defendant Stellar Management  will make to Supervisor Chu's district for a project fully funded by state and local governments.

475.    San Francisco Sunshine Ordinance section 67.29.6 requires gifts of more than $100 to any city department be posted on that department's web site.

476.    The SFMTA memorandum is concealed from the public until Defendants ("SF BOS") vote on Defendants ("Parkmerced Investors Properties, LLC.,) redevelopment agreement.

477.    Defendant ("SFMTA") employees Peter Albert, Jessica Manzi and Matt Lasky memorandum is a part of the 14 "phantom pages" of revisions inserted into Defendants ("Parkmerced Investors Properties, LLC.,") redevelopment agreement on the day Defendants ("SFBOS") vote on the redevelopment agreement.

478.    Plaintiffs allege in combination and collusion to multiple predicate acts Defendants working in concert conspire to violate 18 U.S.C. § 1962 (d) in concealment of the $50,000 memorandum.

479.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

## TENTH CAUSE OF ACTION

Federal Civil R.I.C.O. Conspiracy to Conceal a Bribe 18 U.S.C. § 1961 Section 201

480.    All Plaintiffs Against All Defendants, Michael Yarne, Esq, Parkmerced Investors Properties, LLC., Fortress Investment Group LLC, Rockpoint Group LLC, Maximus, Stellar Management, San Francisco State University, John Avalos, Malia Cohen, Carmen Chu, David Campos, Esq., David Chiu, Esq., Mark Farrell Esq, Jane Kim, Esq, Eric Mar, Ross Mirkarimi, Sean Elsbernd Esq, Scott Wiener Esq, City Attorney, Dennis Herrera Esq., DCA Charles R. Sullivan, Esq, DCA Cheryl S. Adams, Esq,

481.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

482.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

483.    Plaintiff (" Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a  mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

484.    Michael Yarne, Esq., of the Office of Workforce Economic Development hereinafter ("OWED") is the Project Manager I assigned to work on the Parkmerced Development Agreement.

485.    On the weekend of May 21, 2011 and May 22, 2011 Michael Yarne, Esq., conspires with Defendants ("Parkmerced") and ("SFBOS") on the Land Use Economic Development

Committee to obscure 14 "phantom pages" of revisions to Defendant's ("Parkmerced Investors Properties LLC.,) redevelopment agreement from the public.

486.    Defendant Michael Yarne, Esq., calls each Supervisor on the Land Use Economic Development Committee and asks the Supervisors to adopt the 14 "phantom pages" of revisions to Defendant ("Parkmerced Investors Properties LLC.,") redevelopment agreement that will be presented at their next Land Use Economic Development Committee meeting.

487.    The Land Use Economic Development Committee (hereinafter LUEDC) is moved to coincide with the day Defendants the Full Board of Supervisors meet to vote on Defendant's ("Parkmreced Investors Properties LLC.,") redevelopment agreement.

488.    On Tuesday, May 24, 2011 President of the Board of Supervisors Defendant David Chiu, Esq., asks Supervisors on the LUEDC to adopt the 14 "phantom pages" of revisions and to recommend the pages to the full Board of Supervisors without any changes.

489.    On Tuesday, May 24, 2011 the Supervisor of the district where Parkmerced is located Defendant Supervisor ("Sean Elsbernd, Esq.,") accompanies Defendant Supervisor ("David Chiu. Esq.,") to the Land Use Economic Development Committee meeting.

490.    On May 24, 2011 a motion is made by Supervisor Defendants members on the Land Use Economic Development Committee to adopt the 14 "phantom pages" of revisions into Parkmerced's Redevelopment Agreement.

491.    On May 24, 2011 Supervisor Defendants on the LUEDC motion passes and the 14 "phantom pages" of revisions are inserted into Parkmerced's Redevelopment Agreement and recommendation that no changes be made to the revisions.

492.    On May 24, 2011  Supervisor Defendants on the LUEDC forward the 14 "phantom pages" to Defendants San Francisco Board of Supervisors.

493.    On May 24, 2011 the meeting with Defendants the full ("SFBOS") meets about 2 hours

after the Land Use Economic Development Committee.

494.    On May 24, 2011 pandemonium erupts at full San Francisco Board of Supervisors

meeting over the insertion of the 14 "phantom pages" as members of the public have not seen the

revisions.

495.    On May 24, 2011 President of the Board of Supervisors Defendant ("David Chiu, Esq.,")

states there will be no public comment on Parkmerced's Redevelopment Agreement or people

will be escorted out the San Francisco Deputies.

496.    Members of the public are very upset that they are denied the opportunity to make a

comment on the demolition of their homes.

497.    On May 24, 2011 at Defendants full ("SF BOS") meeting the issue is raised by one of the

Defendants a Supervisor that the adaptation of the 14 pages of revisions could be a possible

violation of the Ralph M. Brown Act hereinafter the (Brown Act)  Gov Code § 54950 – 54960.1

et seq., state law that pertains to public meetings.

498.    A question is presented to a Deputy City Attorney hereinafter ("DCA") Cheryl S. Adams

Esq., about the legality of the procedure on the insertion of the 14 "phantom pages" of revisions.

499.    Another Supervisor raises the issue that it is not legal.

500.    Defendant DCA Adams, Esq., states there are no violations of the Brown Act.

501.    The issue is raised by a Supervisor that there is a possible violation of San Francisco

Sunshine Ordinance.

502.    Defendant DCA ("Charles R. Sullivan, Esq.,") states he writes the 14 "phantom pages" of

revisions the night before the meeting.

503.    Defendant DCA ("Adams, Esq.,") states "there are no violations of the Sunshine Ordinance".

504.    Defendant City Attorney ("Dennis Herrera, Esq.,") ("hereinafter CA Herrera, Esq.,") is present throughout the entire meeting and does not make any comments.

505.    Defendant Supervisor Carmen Chu whose district will receive a $50,000 donation from Defendant ("Parkmerced Investors Properties, LLC.,") does not recuse herself from the vote on Parkmerced's Redevelopment Agreement.

506.    Defendant Supervisor ("Carmen Chu") does not disclose that her district will benefit from the passage of Parkmerced's Redevelopment Agreement.

507.    Defendants ("SF BOS") in a 6/5 vote approve the Parkmerced redevelopment agreement.

508.    The Defendant City and County of San Francisco is paid $300 million for passing of the Parkmerced Development Agreement.

509.    Plaintiffs allege in combination and collusion to multiple predicate act Defendants work in concert conspire to violate 18 U.S.C. § 1961 Section 201 in concealment of the 14 phantom pages of revisions.

510.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

///

///

///

///

///

ELEVENTH CAUSE OF ACTION

Federal Civil R.I.C.O. Conspiracy to Conceal a Bribe 18 U.S.C. § 1961 Section 201

All Plaintiffs Against All Defendants, City and County of San Francisco, San Francisco Planning
Department Employees, John Rahaim, Richard Cooper, Brian Smith Keith De Martini, Lulu
Hwang, Elizabeth Watty, Commissioner Gwyneth Borden, and Does 1-50

511.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

512.    Plaintiff Gavin has a physical disability that substantially limits one or more major life
activities.

513.    Plaintiff ("Gavin") is a single parent who is permanently disabled with multiple
disabilities including but not limited to a  mobility disability that requires Plaintiff ("Gavin") to
use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a
rollator.

514.    Between May 14, 2011 to July 21, 2011 Plaintiff ("Gavin") submits by mail or facsimile
eight request's for public information and public records for Parkmerced's Redevelopment
Agreement.

515.    On June 02, 2011 Plaintiff ("Gavin") mails a letter to Senior Environmental Planner
Richard Cooper hereinafter ("Mr. Cooper") and request's all information related to Parkmerced's
Redevelopment Agreement.

516.    On June 03, 2011 Defendant ("Mr. Cooper")  receives Plaintiff ("Gavin's") letter.

517.    On June 10, 2011 Plaintiff ("Gavin") alleges former Mayor Edwin M. Lee signs off on
the Parkmerced's Redevelopment Agreement despite the controversy at the meeting and in the
newspapers.

518.    Newspapers have written that the Brown Act under Gov. Codes §§ 54954.3 (a) 10 and 54954.3 may have been violated by the San Francisco Board of Supervisors.

519.    On June 22, 2011 Defendant ("Mr. Cooper") responds to Plaintiff ("Gavin's") request for Parkmerced's Redevelopment Agreement documents.

520.    On June 22, 2011 Defendant ("Mr. Cooper") has a box of Parkmerced documents delivered to Plaintiff ("Gavin's") family home at no cost and without a note.

521.    On June 23, 2011 Plaintiff ("Gavin") faxes a letter to Defendant ("Mr. Cooper") requesting the 14 "phantom pages" of revisions inserted into the Parkmerced Redevelopment Agreement that are not included with the documents inside the box.

522.    On June 29, 2011 Plaintiff ("Gavin") also submits a personal request in person to Defendant SF Planning  employee Defendant ("Elizabeth Watty").

523.    On June 29, 2011 Plaintiff ("Gavin") requests all of the documents on the Parkmerced redevelopment agreement explaining that Defendant ("Mr. Cooper") did not send the 14 "phantom pages" of revisions.

524.    Plaintiff ("Gavin") never receives a response from Defendant ("Elizabeth Watty").

525.    On June 30, 2011 Defendant ("Bernard Polacci") does not respond to Plaintiff ("Gavin's") request for a reasonable accommodation to have a closer parking space near Plaintiff's home.

526.    Plaintiff ("Gavin") contacts SFMTA about a disabled parking space in front of Plaintiff's home.

527.    In July 2011 Plaintiff ("Gavin's") family files Sunshine complaint #11048 against elected officials involved in violation of the open meeting laws under the Ralph M. Brown Act and San Francisco Sunshine Ordinance.

528. On July 07, 2011, Plaintiff Gavin submits to Defendant ("Elizabeth Watty") a detailed list of documents requested on June 29, 2011.

529. On July 11, 2011 SF Planning Dept Operations & IT Administrator Defendant ("Lulu Hwang") notifies Plaintiff ("Gavin") the requested materials total approximately 3500 pages.

530. On July 11, 2011, Defendant ("Lulu Hwang") offers to produce electronic copies for the documents on a compact disc for a duplication fee of $0.25 for paper copies at $340.

531. Plaintiff ("Gavin") requests a reasonable accommodation for the cost of $340 to be waived due to an economic hardship.

532. On July 27, 2011, Defendant ("SF Planning Depart") sends Plaintiff ("Gavin") a form to complete for consideration of a fee waiver based on financial hardship.

533. Plaintiff ("Gavin") does not complete the form alleging violation of ADA and HIPPA rights.

534. Plaintiff ("Gavin") files a Sunshine Complaint #11068 against the San Francisco Planning Department.

535. On January 03, 2012 the San Francisco Ordinance Task Force (hereinafter SOTF) finds Defendants San Francisco Planning Department employees in violation of the San Francisco Sunshine Ordinance sections: The Task Force finds the Planning Department in violation of Sunshine Ordinance under sections 67.21(a) "for failure to provide Anonymous with copies of all Parkmerced project documents as requested on June 2, 2011 and June 23, 2011 without unreasonable delay; 67.21 (b) for failure to provide Anonymous with copies of all Parkmerced project documents as soon as possible and within 10 days of the June 2, 2011 and June 23, 2011 requests; and 67.25 (d) for failure to provide Anonymous with copies of all Parkmerced project documents on a rolling basis..."

536.    Defendants San Francisco Planning Department never complies with the findings of the SOTF.    See Ex 9

537.    Plaintiffs allege in combination and collusion to multiple predicate acts Defendants in concert conspire to violate 18 U.S.C. § 1961 Section 201 Conspiracy to Conceal a Bribe.

538.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

TWELFTH CAUSE OF ACTION

Federal Civil R.I.C.O. 18 U.S.C. § 1341 Mail Fraud

All Plaintiffs Against Defendants San Francisco County Transportation Authority, San Francisco Municipal Transportation Agency, Fortress Investment Group, LLC, Constantine Dakalois, Rockpoint Group, Maximus, Robert Rosania Greystar Real Estate and Property, Greystar Real Estate and Property Employee Margot Loiselle, Parkmerced Investors Properties, LLC, Robert Parkmerced Investors Properties LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, Stellar Management, Laurence Gluck, Paula Katz Esq, Ryan Jackson, Matthew Lebo, individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-100

539.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

540.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

541.    Plaintiff ("Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

542.    The district judge in San Francisco, CA  is assigned Plaintiff's case in December 2012.

543.    The district judge grants Plaintiff no relief or ex-parte hearings within a four month time
period.

544.    Plaintiff ("Gavin") durable medical equipment is seized in the wrongful eviction of
Plaintiff's from Plaintiff's home.

545.    Plaintiff ("Gavin") files multiple motions in the attempt to obtain access to respiratory
durable medical equipment that is needed.

546.    In April 2013 the district judge dismisses Plaintiff ("Gavin's") family case with prejudice.

547.    In April 2013 the district judge in the order states Plaintiff ("Gavin") and Plaintiff's son
("Bamidele Hambolu") are vexatious litigants and instructs the court clerks not to accept
documents from Plaintiff ("Gavin") or Plaintiff ("Bamidele Hambolu").

548.    Defendant ("Greystar Real Estate") (hereinafter Greystar) office in San Francisco, CA
manages Parkmerced.

549.    On June 11, 2013 two years after passage of Defendant's Parkmerced Redevelopment
Agreement the issue of the $50,000 contribution resurfaces again.

550.    On June 11, 2013 two months after the district judge dismiss Plaintiff ("Gavin's") family
complaint with prejudice the issue of the $50,000 contribution resurfaces again.

551.    On June 11, 2013 after the closure of Plaintiff ("Gavin's") family case there is a
continuum of activities among Defendants in violation of the Racketeering Influenced and
Corrupted Organizations Act 18 U.S. C. §§ 1961-1968 (hereinafter R.I.C.O.).

552.    Defendant ("Greystar Real Estate") (hereinafter Greystar) property management
employee ("Margot Loiselle") works in Defendant's office in Phoenix, AZ.

553.    On June 11, 2013 Defendant ("Greystar") employee Defendant's ("Margot Loiselle,")

writes a check on behalf of Defendants ("Parkmerced Investors Properties, LLC.,") ("Stellar

Management") employee ("Seth Mallen") for $50,000.

554.    Defendant ("Margot Loiselle") mails the $50,000 check to San Francisco, CA to

Defendant ("San Francisco Municipal Transportation Agency" hereinafter SFMTA).

555.    On May 24, 2011 just prior to the full Board of Supervisors meeting to vote on

Defendants ("Parkmerced Investors Properties, LLC.,) there are 14 "phantom pages" of revisions

inserted into Defendant's ("Parkmerced Investors Properties, LLC.,) redevelopment agreement.

556.    On May 24, 2011 a memo written on Defendant's ("SFMTA") stationery to Defendant

("Seth Mallen") is among the 14 "phantom pages" inserted into the document.

557.    Defendant's ("SFMTA") memo about the $50,000 is written on March 28, 2011 and is

concealed from the public until after passage of Defendant's ("Parkmerced Investors Properties,

LLC.,") Redevelopment Agreement.

558.    Defendant ("SFMTA") cashes the check into the agency's account.

559.    On June 11, 2013 Plaintiffs allege Defendants in combination and collusion to multiple

predicate acts Defendants violate R.I.C.O. under 18 U.S.C. § 1341 et seq., mail fraud.

560.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and

therapeutic animal will be proven at trial.

///

///

///

///

## THIRTIETH CAUSE OF ACTION

Fair Debt Collection Practices Act 15 U.S.C. § 1692-1692p

All Plaintiffs Against Defendants American Utility Management, Fortress Investment Group
LLC., Parkmerced Investors Properties, LLC, Maximus, Robert Rosania, Constantine Dakalois,
Rockpoint Group LLC,   Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin,
Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern,
Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar
Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State
University,  individual, heirs, successors, assigns, principals, trustees, sureties, subroutines,
representatives, agents, employees, corporate, partnership, associates, and insures of Defendants
1-50

561.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

562.    Plaintiff ("Gavin"), is a single parent who is permanently disabled with multiple
disabilities including but not limited to a  mobility disability that requires Plaintiff ("Gavin") to
use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a
rollator.

563.    Defendants ("Parkmerced Investors Properties, LLC.,") contract with Defendant
("American Utilities Management") hereinafter ("AUM") for third-party utility billing for water,
sewer and garbage.

564.    On August 24, 2011 Defendants ("Parkmerced Investors Properties, LLC.,") has the
security guard riding on a Sedgeway without knocking place the first Three (3) Day Notice on
Plaintiff ("Gavin's) family front door knob for usurious utility fees (water, sewer and garbage) in
the amount of $1,586.72.  See Ex # 5 & 8

565.   On September 19, 2011 Defendants ("Parkmerced Investors Properties, LLC.,") has the security guard riding on a Sedgeway without knocking place the second Three (3) Day Notice on Plaintiff ("Gavin's) family front door knob for usurious utility fees (water, sewer and garbage) in the amount of $1,110.92.  See Exhibit #

566.   Defendant ("AUM") is attempting to collect debts on behalf of another as defined by 15 U.S.C. § 1692a(6). By so doing Defendant ("AUM") initiates multiple legal obligations under the Fair Debt Collections Practices Act hereinafter ("FDCPA") 15 U.S.C. §§ 1692- 1692p et seq., each of which Defendant ("AUM") fails to meet.  Through their deceptive notices, Defendant ("AUM") deprives Plaintiffs of notice of their right to dispute usurious utility fees and hampers their ability to challenge eviction proceedings that allow procedural due process and debt collection efforts.

567.   Defendant's ("AUM") non-disclosure of being a debt collector on behalf of their client Defendant ("Parkmerced Investors Properties, LLC.,") is a false statement and violates 15 U.S.C. § 1692a (6): "The injured party may bring an action based on fraud or mistake more than 3 years after the transaction if the party is able to show that he or she did not discover the facts, and could not with reasonable diligence have discovered them, prior to 3 years before the action." (Witkin, Cal. Proc. 5Th (2008) Plead § 929, p. 344."

568.   Plaintiffs allege Defendant's ("AUM") non-disclosure of being a debt collector is a false statement and violates 15 U.S.C. § 1692e (10), which provides that "[a] debt collector may not use any false, deceptive or misleading statements in connection with collection of any."

569.   Plaintiff ("Gavin's") family alleges Defendant ("AUM") non-disclosure of being a debt collector is injurious in violation Plaintiff ("Gavin's") family rights under ("FDCPA") 15 U.S.C. §§ 1692- 1692p et seq.

570.    Plaintiff ("Gavin") alleges Defendant ("AUM") third-party billing statements are false
and violates Plaintiff ("Gavin's") family rights under 18 U.S.C. § 1341 mail fraud.

571.    Over 1,200 residents have been issued a Three (3) Day Notice for usurious utility fees
(water, sewer and garbage) in regards to Defendant's ("AUM") billing statements.

572.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and
therapeutic animal will be proven at trial.

## FOURTEENTH CAUSE OF ACTION

## Federal Civil R.I.C.O Wire Fraud 18 U.S.C. § 1343 et seq.,

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors
Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC,
Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi
MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of
Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence
Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University, individual,
heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents,
employees, corporate, partnership, associates, and insures of Defendants 1-50

573.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

574.    Plaintiff Gavin has a physical disability that substantially limits one or more major life
activities.

575.    Plaintiff ("Gavin") is a single parent who is permanently disabled with multiple
disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to
use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a
rollator.

576.    Defendants ("Parkmerced Investors Properties, LLC.,") contracts with Defendant

("AUM") for third-party billing of utilities (water, sewer and garbage).

577.    On August 24, 2011 Defendants ("Parkmerced Investors Properties, LLC.,") has the

security guard riding on a Sedgeway without knocking place the first Three (3) Day Notice on

Plaintiff ("Gavin's) family front door knob for usurious utility fees (water, sewer and garbage) in

the amount of $1,586.72.  See Ex #

578.    On September 19, 2011 Defendants ("Parkmerced Investors Properties, LLC.,") has the

security guard riding on a Sedgeway without knocking place the second Three (3) Day Notice on

Plaintiff ("Gavin's) family front door knob for usurious utility fees (water, sewer and garbage) in

the amount of $1,110.92.  See Exhibit  #

579.    Plaintiffs allege Defendant's ("AUM") non-disclosure of being a debt collector is a false

statement and violates 15 U.S.C. § 1692e (10), which provides that "[a] debt collector may not

use any false, deceptive or misleading statements in connection with collection of any debt or to

obtain information concerning a consumer."

580.    Defendant ("AUM") is a debt collector who seeks to collect a consumer debt which is

due and owing or alleged to be due and owing from Plaintiff ("Gavin's") family are

"consumers") as the term is defined by 15 U.S.C. § 1692a(3).

581.    This practice goes be beyond a simple technical violation of the law.  It has real

consequences such as damaging peoples' credit, making it difficult to get a good loan from the

bank, loss of potential gainful employment, and culminates and/or perpetuates homelessness

which can cause a person adverse medical conditions and/or death.

582.    Defendant ("AUM") uses an instrumentality of interstate commerce or the United States Postal Service in a business whose principal purpose of which is the collection of debts, who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and therefore "debt collectors" as the phrase is defined by 15 U.S.C. § 1692a(6).

583.    Plaintiffs allege Defendant ("AUM") in combination and collusion to multiple violations of the FDCPA 1692-1692p thus, collection of debt or debts to be owed are illegal.

584.    Over 1,200 residents have been issued a Three (3) Day Notice for usurious utility fees (water, sewer and garbage) in regards to Defendant's ("AUM") billing statements.

585.    Plaintiffs allege Defendant ("AUM") use of electronic payments is an instrument of interstate commerce that violates 18 U.S.C. § 1343 wire fraud.

586.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

## FIFTEENTH CAUSE OF ACTION

### Federal Civil R.I.C.O Wire Fraud 18 U.S.C. § 1343 et seq.,

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University,  individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

587.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

588.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

589.    Plaintiff ("Gavin"), is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

590.    In January 2013 the district judge assigned to Plaintiff ("Gavin's") family case who has not responded to any of Plaintiff (Gavin's) motions instructs Plaintiff ("Gavin's") family not to file any more motions.

591.    In April 2013 dismisses Plaintiff ("Gavin's") family case with prejudice and instructs the clerks not to process any claim from Plaintiff ("Gavin") or Plaintiff ("Bamidele Hambolu"), Plaintiff ("Gavin's") son.

592.    District Judge does not ever grant Plaintiff ("Gavin") any hearing and stalls the case for 4 months.

593.    On April 2013 U.S. district judge trampled on Plaintiff ("Gavin's") family rights enumerated in the U. S. Constitution under the Fourteenth Amendment, "Due Process" and "Equal Protection."

594.    On April 2013 U.S. district judge tramples on Plaintiff ("Gavin's") family rights enumerated in the U. S. Constitution under the Seventh Amendment, "Right to a Jury Trial".

595.    Defendant ("Fortress Investment Group, LLC., ") sells their parcels of Parkmerced acres

to a back to the original owner of the property Defendant ("Robert A. Rosania") for one billion

dollars.

596.    Two months after a district judge closes Plaintiff ("Gavin's") family case without ever

providing Plaintiff ("Gavin'") family an appearance in the Court furtherance of alleged violations

under RICO continue in this case with all Defendants.

597.    On June 11, 2011 Defendant ("Greystar Real Estate Partners") employee Defendant

("Margot Loiselle") in Phoenix, AZ writes a check on behalf of Defendant ("Seth Mallen") and

Defendants ("Parkmerced Investors Properties, LLC.,") and mails the check to Defendant

("SFMTA") in San Francisco, CA.

598.    Defendant ("Greystar") office in San Francisco, CA  manages Defendants ("Parkmerced

Investors Properties, LLC.,").

599.    On June 11, 2013 two years after passage of Defendants ("Parkmerced Investors

Properties, LLC.,") Redevelopment Agreement by Defendants ("SF BOS") reference to the

$50,000 contribution from Defendants ("Parkmerced Investors Properties, LLC") resurface.

600.    Defendant (SFMTA") deposits Defendant's ("Greystar Real Estate Partners") check into

the Defendant's ("SFMTA") bank account.

601.    Plaintiffs allege Defendants collectively in combination and collusion violates wire fraud

under 18 U.S.C. § 1343 et seq.

602.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and

therapeutic animal will be proven at trial.

///

## SIXTEENTH CAUSE OF ACTION

Federal Civil R.I.C.O Money Laundering 18 U.S.C. § 1956 et seq.,

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors
Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC,
Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi
MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of
Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence
Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University, individual,
heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents,
employees, corporate, partnership, associates, and insures of Defendants 1-50

603.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

604.    Plaintiff Gavin has a physical disability that substantially limits one or more major life
activities.

605.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is
permanently disabled with multiple disabilities including but not limited to a mobility disability
that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, use a
wheelchair, walker, crutches, a cane, and a rollator.

606.    In January 2013 the district judge assigned to Plaintiff ("Gavin's") family case who has
not responded to any of Plaintiff (Gavin's) motions instructs Plaintiff ("Gavin's") family not to
file any more motions.

607.    In April 2013 dismisses Plaintiff ("Gavin's") family case with prejudice and instructs the
clerks not to process any claim from Plaintiff ("Gavin") or Plaintiff ("Bamidele Hambolu"),
Plaintiff ("Gavin's") son.

608.    The district judge does not ever grant Plaintiff ("Gavin") any hearing and stalls the case for four months.

609.    On April 2013 U.S. district judge trampled on Plaintiff ("Gavin's") family rights enumerated in the U. S. Constitution under the Fourteenth Amendment, "Due Process" and "Equal Protection."

610.    On April 2013 U.S. district judge trampled on Plaintiff ("Gavin's") family rights enumerated in the U. S. Constitution under the Seventh Amendment, "Right to a Jury Trial".

611.    Two months after a district judge closes Plaintiff ("Gavin's") family case without ever providing Plaintiff ("Gavin'") family an appearance in the Court furtherance of alleged violations under RICO continue in this case with all Defendants.

612.    On June 11, 2011 Defendant ("Greystar Real Estate Partners") employee Defendant ("Margot Loiselle") in Phoenix, AZ writes a check on behalf of Defendant ("Seth Mallen") and Defendants ("Parkmerced Investors Properties, LLC.,") and mails the check to Defendant ("SFMTA") in San Francisco, CA.

613.    Defendant ("Greystar") office in San Francisco, CA  manages Defendants ("Parkmerced Investors Properties, LLC.,").

614.    On June 11, 2013 two years after passage of Defendants ("Parkmerced Investors Properties, LLC.,") redevelopment agreement by Defendants ("SF BOS") a reference to the $50,000 contribution from Defendants ("Parkmerced Investors Properties, LLC") resurface.

615.    Defendant (SFMTA") deposits Defendant's ("Greystar") check into the Defendant's ("SFMTA") bank account.

///

616.    Plaintiffs allege Defendants collectively in combination and collusion violates money laundering under 18 U.S.C. § 1956 et seq.

617.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

SEVENTEENTH CAUSE OF ACTION

U.S. Constitution Fourth Amendment

All Plaintiffs Against Defendants Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC, Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University, individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

618.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

619.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

620.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

621.    On July 02, 2012 Plaintiff ("Gavin") experiences heart palpitations and leaves San Francisco Superior Court.

622.     Defendant ("Parkmerced Investors Properties, LLC.,") obtain a writ of possession from the court.

623.     On July 25, 2012 Plaintiff ("Gavin") is found unconscious downstairs in Plaintiff ("Gavin's") family home by the Plaintiff's son Plaintiff (Bamidele Hambolu").

624.     Plaintiff ("Bamidele Hambolu") calls 911 for Plaintiff ("Gavin").

625.     The paramedics arrive and take Plaintiff ("Gavin") to the hospital due to concern over Plaintiff ("Gavin's") heart rate.

626.     While Plaintiff ("Gavin's") family is at the hospital the Plaintiffs are wrongfully evicted from the Plaintiffs home.

627.     Defendant ("Parkmerced Investors Properties, LLC.,") landlord tenant attorney Defendant ("David Wasserman, Esq.,") obtains a Writ of Possession and discards all of Plaintiff ("Gavin's) family property.

628.     On July 25, 2012 Plaintiff ("Gavin's") family has only the clothes they are wearing.

629.     On July 25, 2012 Plaintiff ("Gavin") has only the pajamas the Plaintiff wore to the hospital.

630.     On July 25, 2012 Defendants (Parkmeced Investors Properties, LLC.,") discards all of Plaintiffs ("Gavin's) family property such as: Plaintiff Gavin's durable medical equipment, respiratory, rollator, wheelchair, crutches, walker, piano, and other family items.

631.     Defendants also discard Plaintiff Gavin's family documents and other legal papers.

632.     Plaintiff ("Gavin's") family allege Defendants ("Parkmerced Investors Properties, LLC.,") landlord attorney Defendant ("David Wasserman, Esq.,") from the law firm Wasserman & Stern violates Plaintiff ("Gavin's") family rights enumerated in the Fourth Amendment "Unlawful Seizure" of private property.

EIGHTEENTH CAUSE OF ACTION

U.S. Constitution Seventh Amendment

All Plaintiffs Against Defendants San Francisco Superior Court, State of California, Parkmerced

Investors Properties LLC, Fortress Investment Group, Maximus, Rockpoint Group, Stellar

Management, Parkmerced Investors attorneys David Wasserman, Esq., and Daniel R. Stern, Esq.,

individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives,

agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

633.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

634.    Plaintiff Gavin has a physical disability that substantially limits one or more major life

activities.

635.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is

permanently disabled with multiple disabilities including but not limited to a  mobility disability

that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a

wheelchair, walker, crutches, a cane, and a rollator.

636.    The Brook Amendment to the United States Housing Act, 42 U.S.C.§§1437a(a), and

1437(o) (2)  - specifying that subsidized tenants may only pay 30 percent of their income as

"rent" - prevents Defendants ("Parkmerced Investors Properties, LLC.,") from converting other

fees to "rent."

637.   On July 02, 2012 Plaintiff ("Gavin") has a two hour session in arbitration with

Defendants Parkmerced Investors Properties, LLC., tenant landlord attorney ("David

Wasserman, Esq.,").

638.    On July 02, 2012 Plaintiff ("Gavin") begins to experience heart palpitations.

639.    On July 02, 2012 the arbitrator tells Plaintiff ("Gavin") the case will not be heard until tomorrow.

640.    On July 02, 2012 Plaintiff ("Gavin") leaves the court building due to the increase in the palpitations.

641.    On July 02, 2012 the Superior Court judge enters a default judgment against Plaintiff ("Gavin's") family.

642.    On July 02, 2012 Defendant ("David Wasserman, Esq.,") obtains a Writ of Possession to enter Plaintiff ("Gavin's) family home.

643.    On September 30, 2011 Defendant ("Parkmerced Investors Properties, LLC.,") landlord attorney Defendant ("David Wasserman, Esq.,") files an unlawful detainer against Plaintiff ("Gavin's") family in Defendant ("San Francisco Superior Court").

644.    Defendant ("David Wasserman, Esq.,") states in the filing that a due diligent effort has been made but Plaintiff ("Gavin's") original lease is lost.

645.    Defendant  ("David Wasserman, Esq.,") Plaintiff ("Gavin's") family have a federal subsidized Housing Choice Voucher from the U.S. Department of Housing and Urban Development (hereinafter HUD).

646.    Defendant  ("David Wasserman, Esq.,") a Constitutional Officer of the Court does not disclose in the Superior Court filings that Defendant ("Parkmerced Investors Properties, LLC.,") signed a contract with San Francisco Housing Authority to accept federal rent payments on behalf of Plaintiff ("Gavin's") family from HUD.

647.    Defendant  ("Daniel Stern, Esq.,") a Constitutional Officer of the Court does not disclose that Defendant ("Parkmerced Investors Properties, LLC.,") signed a contract with Plaintiff

("Gavin") to accept federal rent payments on behalf of Plaintiff ("Gavin's") family from the U.S. Department of Housing and Urban Development, (hereinafter HUD).

648.    The contract Defendants ("Parkmerced Investors Properties, LLC.,") signs with Plaintiff ("Gavin") has federal laws and federal regulations that provide written procedural protections into the Housing Choice Voucher contract.

649.    Codified in federal law, the termination notice requirements must be followed in accordance to the contract.

650.    HUD termination notices require strict compliance.  See e.g., Lakeside Gardens v. Lashay, No. 2007API246, 2008Wisc. App. LEXIS 43, *3-8 (Wis. Ct. App. Jan. 16, 2008) (subsidized owner must comply with federal rules relating to notice of lease termination even if the terms are not included in the lease; see also Swords to Plowshare v. Smith, 294 F. Supp 2d 1067, 1070-1072 (N.D. Cal. 2002) (recognizing that landlord must comply with applicable federal regulations when serving lease termination notice).

651.    Defendant ("San Francisco Superior Court") does not have jurisdiction over the subject matter in the Housing Choice Voucher contract.

652.    Plaintiff ("Gavin's") allege Defendant ("San Francisco Superior Court") deprives Plaintiff ("Gavin's") family of  rights enumerated in the U. S. Constitution, under the Seventh Amendment  ("Right to a Jury Trial").

653.    Plaintiff ("Gavin's") allege Defendant ("San Francisco Superior Court") deprives Plaintiff ("Gavin's") family of rights enumerated in the CA Constitution, under Article I §16 inviolate ("Right to Jury Trial ").

654.    Defendants collective actions cause Plaintiff ("Gavin") adverse impact to the Plaintiff's health that causes multiple hospital visits.

655.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and therapeutic animal will be proven at trial.

## NINETEENTH CAUSE OF ACTION

## U.S. Constitution 8th Amendment

All Plaintiffs Against Defendants American Utility Management, Fortress Investment Group LLC., Parkmerced Investors Properties, LLC., Robert  Rosania, Maximus, Constantine Dakalois, Rockpoint Group LLC,   Parkmerced Employees, Seth Mallen, Bernard Pollaci, John Gavin, Kristine Bakr, Didi MacDonald, Bryce Boddie, Julie Anderson, Christina Zsolnay, Donna Stern, Law Offices of Wasserman & Stern, David Wasserman Esq, Daniel R Stern Esq, Stellar Management, Laurence Gluck, Paula Katz, Ryan Jackson, Matthew Lebo, San Francisco State University,  individual, heirs, successors, assigns, principals, trustees, sureties, subroutines, representatives, agents, employees, corporate, partnership, associates, and insures of Defendants 1-50

656.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

657.    Plaintiff Gavin has a physical disability that substantially limits one or more major life activities.

658.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is permanently disabled with multiple disabilities including but not limited to a mobility disability that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a wheelchair, walker, crutches, a cane, and a rollator.

659.    On August 25, 2011 Plaintiff ("Gavin") faxes Defendant ("Robert A. Rosania") a letter requesting a "reasonable accommodation" to make installment payments on the usurious utility fees for (water, sewer and garbage) and pay monthly fees along with rent each month.

660.    Through electronic communications Defendant ("Parkmerced's Investors Properties

LLC.,") employees urge Defendant ("Robert A. Rosania") not to grant Plaintiff ("Gavin's")

"reasonable accommodation" request.

661.    Defendant ("Robert A. Rosania") does not respond to Plaintiff ("Gavin's") letter.

662.    Defendant ("Robert A. Rosania") does not participant in the interactive process.

663.    Plaintiff ("Gavin") alleges Defendant ("Robert Rosania") violates Plaintiff's rights under

Title II of the 1990 ADA 28 C.F.R. § 35.130 (b) (1) (vii): Otherwise limit a qualified individual

with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by

others receiving the aid, benefit or service.

664.    Plaintiff ("Gavin") alleges Defendant ("Robert Rosania") violates Plaintiff's rights under

Title II of the 1990 ADA 28 C.F.R. § 35.130 (7): A public entity shall make reasonable

modifications in policies, practices, or procedures when the modifications are necessary to avoid

discrimination on the basis of disability, unless the public entity can demonstrate the making the

modifications would fundamentally alter the nature of the service, program, or activity.

665.    Plaintiff ("Gavin") alleges Defendants collective actions in concert are cruel and violate

Plaintiff's rights enumerated in the U.S. Constitution under the Eighth Amendment, "Cruel and

Unusual Punishment."

666.    Defendants collective actions are injurious to Plaintiff ("Gavin"), Plaintiff's family and

therapeutic animal will be proven at trial.

///

///

///

TWENTIETH CAUSE OF ACTION

U.S. Constitution Eighth Amendment

667.    All Plaintiffs Against All Defendants, San Francisco Public Utilities Commission, Ed

Harrington, Harlan Kelly, City and County of San Francisco, San Francisco Board of Supervisors

John Avalos, Malia Cohen, Carmen Chu, David Campos Esq, David Chiu Esq, Mark Farrell,

Esq, Jane Kim Esq, Eric Mar, Ross Markarimi, Sean Elsbernd, Esq, Scott Wiener Esq., City

Attorney, Dennis Herrera Esq, DCA Charles R. Sullivan, Esq., DCA Cheryl S. Adams, Esq,

and Does 1-50

668.    Plaintiffs incorporate every allegation in this complaint as if fully restated herein.

669.    Plaintiff Gavin has a physical disability that substantially limits one or more major life

activities.

670.    Plaintiff ("Lynn Gavin"), (hereinafter Plaintiff "Gavin") is a single parent who is

permanently disabled with multiple disabilities including but not limited to a mobility disability

that requires Plaintiff ("Gavin") to use durable medical equipment such as; leg braces, a

wheelchair, walker, crutches, a cane, and a rollator.

671.    Plaintiff ("Gavin") makes multiple trips to Defendant's ("SFPUC") office.

672.    Plaintiff ("Gavin") speaks with an employee about the voluminous Three (3) Day Notices

issued for usurious utility fees (water, sewer and garbage).

673.    Defendant's ("SFPUC") employee explains to Plaintiff ("Gavin") that there are two

programs to assist customers with utility fees.